## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

**TREVOR MILLER,** individually and on
behalf of all others similarly situated,

   Plaintiff,

v.

**SYRACUSE UNIVERSITY,**

   Defendant.

Case No. 5:21-cv-1073-LEK-TWD

Class Action

## MEMORANDUM OF LAW IN SUPPORT OF UNCONTESTED MOTION FOR <u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................iii

I.      INTRODUCTION .....................................................................................................1

II.     BACKGROUND .......................................................................................................2

      A.     FACTUAL HISTORY ....................................................................................2

      B.     PROCEDURAL HISTORY..............................................................................3

      C.     THE SETTLEMENT ......................................................................................4

III.    ARGUMENT.............................................................................................................6

      A.     LEGAL STANDARDS ...................................................................................6

      B.     THE PROPOSED CLASS ACTION
              SETTLEMENT SHOULD BE PRELIMINARILY APPROVED....................................8

           1.      The Proposed Settlement Terms Are
                   Substantively Fair, Adequate, And Reasonable. ....................................8

                  i.      Complexity, Expense, And Likely
                           Litigation Duration (Grinnell Factor 1) ....................................8

                  ii.     The Reaction Of The Class (Grinnell Factor 2) .....................9

                  iii.    The Stage Of The Proceedings And Amount
                             Of Discovery Completed (Grinnell Factor 3)...........................9

                  iv.    Plaintiff Would Face Real Risks If The
                             Case Proceeded (Grinnell Factors 4 And 5).........................10

                  v.     The Risks Of Maintaining
                             A Class Through Trial (Grinnell Factor 6) ............................11

                  vi.    SU's Ability To Withstand A Greater Judgment (Grinnell Factor 7) 12

                  vii.   The Reasonableness Of The
                               Settlement Considering The Possible Recovery
                               And Attendant Litigation Risks (Grinnell Factors 8 And 9)...............12

           2.      The Remainder Of The Rule 23(E)(2)
                     Factors Support Preliminary Approval.................................................13

                  i.      Plaintiff And His Counsel Have
                               Adequately Represented The Class.......................................13

i

ii.  The Proposal Was Negotiated At Arm's Length...................................14

iii.  The Allocation Plan Is Fair And Adequate. ..........................................14

iv.  The Proposed Form And Method Of Providing
Notice To The Proposed Class Are Appropriate.................................15

v.  The Proposed Attorneys' Fees And
Expenses, And Service Awards Are Fair And Adequate. ...................16

vi.  The Parties Have No Additional Agreements. .....................................17

vii.  Proposed Settlement Class Members Are Treated Equitably.............17

C.  THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS .........................17

1.  The Proposed Settlement Class Meets The Requirements Of Rule 23(A).....18

i.  The Settlement Class Is Sufficiently Numerous. ..................................18

ii.  Commonality Is Satisfied. ....................................................................19

iii.  Typicality Is Satisfied. ..........................................................................20

2.  The Adequacy Requirement Is Met And Plaintiff Should
Be Provisionally Appointed As Settlement Class Representative...................20

i.  Class Members Are Readily Identifiable And Ascertainable. .............21

D.  THE PROPOSED SETTLEMENT CLASS
MEETS THE REQUIREMENTS OF RULE 23(B)(3). .......................................................22

1.  Common Issues Predominate Over Any Individual Questions. .....................22

2.  A Class Action Is Superior To Other Available Methods Of Adjudication. ..22

E.  PROPOSED CLASS COUNSEL SHOULD
BE PROVISIONALLY APPOINTED AS CLASS COUNSEL. ....................................................23

F.  THE PROPOSED NOTICE IS THE BEST PRACTICABLE. ....................................................24

IV.  SCHEDULING AND FINAL FAIRNESS HEARING ........................................................25

V.  CONCLUSION ................................................................................................................25

ii

## TABLE OF AUTHORITIES

**CASES**                                                                                                    **PAGE(S)**

*Amchem Products, Inc. v. Windsor,*
    521 U.S. 591 (1997) ................................................................................................ 22

*Baffa v. Donaldson, Lufkin Jenrette Sec. Corp.,*
    222 F.3d 52 (2d Cir. 2000) ..................................................................................... 21

*Basso v. New York Univ.,*
    363 F. Supp. 3d 413 (S.D.N.Y. 2019) ................................................................... 20

*Brooklyn Ctr. For Indep. Of The Disabled v. Bloomberg,*
    290 F.R.D. 490 (S.D.N.Y. 2012) ........................................................................... 20

*Carrasco v. Endurance U.S. Holdings Corp.,*
    No. 17-7319, 2020 U.S. Dist. Lexis 46905 (S.D.N.Y. Mar. 17, 2020) ............... 18

*Charron v. Pinnacle Grp. NY LLC,*
    874 F. Supp. 2d 179 (S.D.N.Y. 2012) .................................................................. 11

*Charrons v. Pinnacle Grp., NY LLC,*
    269 F.R.D. 221 (S.D.N.Y. 2010) ........................................................................... 22

*City Of Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974) ............................................................................ 7, 12

*Consol. Rail Corp. v. Hyde Park,*
    47 F.3d 473 (2d Cir. 1995) ..................................................................................... 19

*County Of Suffolk v. Long Island Lighting Co.,*
    710 F. Supp. 1422 (E.D.N.Y. 1989) ...................................................................... 18

*Denney v. Deutsche Bank Ag,*
    443 F.3d 253 (2d Cir. 2006) ..................................................................................... 7

*Dornberger v. Metro. Life Ins. Co.,*
    203 F.R.D. 118 (S.D.N.Y. 2001) ........................................................................... 17

*D'amato v. Deutsche Bank,*
    236 F.3d 78 (2d Cir. 2001) ....................................................................................... 8

*D'angelo v. Hunter Bus. Sch., Inc.,*
    No. 21-3334, 2023 U.S. Dist. Lexis 131029 (E.D.N.Y. July 28, 2023) .......... 11, 14

*Ebin v. Kangadis Food, Inc.*,
    297 F.R.D. 561 (S.D.N.Y. 2014) ................................................................ 20

*Feder v. Elec. Data, Sys. Corp.*,
    429 F.3d 125 (5th Cir. 2005) ................................................................ 23

*Fero v. Excellus Health Plan, Inc.*,
    502 F. Supp. 3d 724 (W.D.N.Y. 2020) ................................................................ 18

*Flynn v. New York Dolls Gentlemen's Club*,
    No. 13-6350, 2014 U.S. Dist. Lexis 142588 (S.D.N.Y. Oct. 6, 2014) ................. 6

*Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*,
    301 F.R.D. 116 (S.D.N.Y. 2014) ................................................................ 19

*Gilliam v. Addicts Rehab. Ctr. Fund*,
    No. 05-3452, 2008 U.S. Dist. Lexis 23016 (S.D.N.Y. Mar. 24, 2008) ................ 13

*Gomez v. Lace Ent., Inc.*,
    No. 15-3326, 2017 U.S. Dist. Lexis 5770 (S.D.N.Y. Jan. 6, 2017) ................. 23

*Hadel et al. v. Gauco, LLC*,
    No. 15-3706, 2016 U.S. Dist. Lexis 33085 (S.D.N.Y. Mar. 14, 2016) ................ 6

*In Re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000) ................................................ 8, 9, 10, 12

*In Re Bear Stearns Cos., Inc. Sec., Derivative & Erisa Litig.*,
    909 F. Supp. 2d 259 (S.D.N.Y. 2012) ................................................ 10, 11

*In Re Capital One Consumer Data Sec. Breach Litig.*,
    No. 19-2915, 2022 U.S. Dist. Lexis 234943 (E.D. Va. Sep. 13, 2022) ................ 18

*In Re Initial Pub. Offering Sec. Litig.*,
    260 F.R.D. 81 (S.D.N.Y. 2009) ................................................................ 23

*In Re Michael Milken & Assocs. Securities Litig.*,
    150 F.R.D. 57 (S.D.N.Y. 1993) ................................................................ 12

*In Re Nasdaq Market–Makers Antitrust Litig.*,
    176 F.R.D. 99 (S.D.N.Y. 1997) ................................................................ 14

*In Re Painewebber Ltd. Partnerships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) ................................................................ 10

*In Re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  330 F.R.D. 11 ............................................................................................ 7, 12

*In Re Scotts Ez Seed Litig.*,
  304 F.R.D. 397 (S.D.N.Y. 2015) ................................................................ 21

*In Re Solara Med. Supplies Data Breach Litig.*,
  No. 19-2284, 2022 U.S. Dist. Lexis 72834 (S.D. Cal. Apr. 20, 2022) .................... 18

*In Re Sonic Corp. Customer Data Breach Litig.*,
  No. 17-02807, 2020 U.S. Dist. Lexis 204169 (N.D. Ohio Nov. 2, 2020) ................ 18

*In Re Visa Check Mastermoney Antitrust Litig.*,
  280 F.3d 124 (2d Cir. 2001) ...................................................................... 22

*In Re Worldcom, Inc. Sec. Litig.*,
  388 F.Supp.2d 319 (S.D.N.Y. 2005) .......................................................... 15

*James v. China Grill Mgmt.*,
  No. 18-455, 2019 U.S. Dist. Lexis 72759 (S.D.N.Y. Apr. 30, 2019) ................ 17

*Joel A. v. Giuliani*,
  218 F.3d 132 (2d Cir. 2000) ........................................................................ 6

*Kelen v. World Fin. Network Nat'l Bank*,
  302 F.R.D. 56 (S.D.N.Y. 2014) .................................................................... 6

*Manley v. Midan Rest. Inc.*,
  No. 14-1693, 2017 U.S. Dist. Lexis 44560 (S.D.N.Y. Mar. 27, 2017) ............ 12

*Mcbean v. City Of New York*,
  228 F.R.D. 487 (S.D.N.Y. 2005) ................................................................ 22

*Moses v. N.Y. Times Co.*,
  79 F.4th 235 (2d Cir. 2023) ........................................................................ 17

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993) ...................................................................... 20

*Seaman v. Nat'l Collegiate Student Loan Tr. 2007-2*,
  No. 18-1781, 2023 U.S. Dist. Lexis 43041 (S.D.N.Y. Mar. 13, 2023) .............. 18, 19

*Stinson v. City Of N.Y.*,
  282 F.R.D. 360 (S.D.N.Y. 2012) ................................................................ 19

*Stinson v. City Of New York*,
    256 F. Supp. 3d 283 (S.D.N.Y. 2017) ................................................................... 12

*Sykes v. Mel Harris & Assocs. LLC*,
    285 F.R.D. 279 (S.D.N.Y. 2012) ................................................................... 18, 19

*Sykes v. Mel S. Harris & Assocs. LLC*,
    780 F.3d 70 (2d Cir. 2015) ................................................................................. 21

*TBK Partners, Ltd. v. Western Union Corp.*,
    517 F. Supp. 380 (S.D.N.Y. 1981) ....................................................................... 8

*Torres v. Gristede's Operating Corp.*,
    No. 04-3316, 2010 U.S. Dist. Lexis 139144 (S.D.N.Y. Dec. 21, 2010) ............... 9

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ................................................................................... 17, 19

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ........................................................................... *passim*

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982) ................................................................................. 8

## **STATUTES**

FED. R. CIV. P. 23 ................................................................................................ *passim*

FED. R. CIV. P. 12 ........................................................................................................ 4

N.Y. C.P.L.R. 6301 ..................................................................................................... 4

GBL § 349 ..................................................................................................................... 3

GBL § 899-AA ............................................................................................................. 3

Newberg § 11.27 ........................................................................................................ 18

## I.    <u>INTRODUCTION</u>

Subject to Court approval, Plaintiff Trevor Miller ("Plaintiff") and Defendant Syracuse University ("Defendant" or "SU," collectively with Plaintiff, the "Parties") have settled this putative class action arising out of Plaintiff's allegations with respect to a data breach incident that occurred between approximately September 24 and September 28, 2020 (the "Data Incident"). This proposed settlement, as embodied in the agreement attached to the Declaration of Todd S. Garber ("Garber Decl.") as Exhibit A (the "Settlement Agreement" or "Settlement") and described in greater detail herein, resolves Plaintiff's claims on a class-wide basis, provides relief to a putative class of approximately 9,800 individuals (collectively, the "Class," "Settlement Class," or "Class Members"), and satisfies all of the criteria for preliminary settlement approval and certification of a settlement class under New York and federal law. Plaintiff respectfully submits this memorandum in support of his motion for preliminary approval of the Settlement to resolve this case pursuant to Federal Rule of Civil Procedure 23 ("Rule 23").

With this motion, Plaintiff respectfully requests that the Court (1) grant preliminary approval of the Settlement Agreement; (2) for settlement purposes, conditionally certify the proposed Settlement Class under Rule 23; (3) appoint Plaintiff Trevor Miller as Class Representative and Finkelstein, Blankinship Frei-Pearson and Garber, LLP ("FBFG") and Keller Postman LLC ("KP") as Class Counsel for the conditionally certified Settlement Class; (4) appoint Postlethwaite & Netterville, APAC ("P&N") as Claims Administrator consistent with the terms of the Settlement Agreement; (5) approve the provision of the proposed Notice to the Settlement Class; and (6) set a hearing date for the final approval of the proposed Settlement and an award of attorneys' fees and costs.

1

## II.    <u>BACKGROUND</u>

### A.    <u>Factual History</u>

Plaintiff is a former student at Syracuse University.  Class Action Complaint, ECF No. 2 ¶ 2 ("Compl.").  As a condition of Plaintiff's attendance, Plaintiff was required to and did supply Sensitive Information[1] to Defendant.  *Id.*

Plaintiff alleges that Defendant had insufficient cybersecurity measures in place to safeguard the Sensitive Information that Plaintiff and Class Members provided to Defendant.  *Id.* ¶ 3.  As a result, cybercriminals were able to gain access to – or "hack" – at least one of Defendant's employee's email accounts between approximately September 24, 2020 and September 28, 2020, following a successful "phishing" attempt that Defendant's employees failed to identify or adequately safeguard against, thereby gaining access to an employee e-mail account which contained potentially Sensitive Information of approximately 9,800 Class Members, including Plaintiff.  *Id.*  Defendant has denied the allegation of wrongdoing or negligence on its part or that it failed to properly protect any Sensitive Information.

After the Data Incident compromised Plaintiff's Sensitive Information, including his Social Security Number, Plaintiff learned of an unauthorized charge on his Chase Bank checking account on or about July 13, 2021, after the Data Incident occurred.  *Id.* ¶ 4.  Addressing this apparent fraudulent charge on his account and preventing further bank fraud required Plaintiff to suspend and cancel his debit card and to take the time to personally go to a Chase Bank branch location to have a replacement card issued.  *Id.*  For over a week, Plaintiff did not have access to a functional debit card, as a replacement card was not issued and received until on or about July 22, 2021.  *Id.*

---

[1] "Sensitive Information", as used herein, refers to financial information (including payment information), health insurance numbers, and other private health insurance information, medical information (including private diagnosis information and treatment information), and other protected health information (such as Social Security number and date of birth) as defined by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").  *See* Compl.

Syracuse notified the affected individuals in February 2021, more than four months after it learned that the Data Incident occurred. *Id.* ¶ 28-29; Notice letter dated Feb. 4, 2021, ECF No. 22-3 ("Notice Letter"). The notification suggested that Plaintiff and Class Members review account statements, monitor credit reports, and perhaps institute security freezes of their financial accounts to safeguard their financial well-being from harm arising from the disclosure of their Sensitive Information. Notice Letter, ECF No. 22-3.[2] The notification also offered only a single year of credit monitoring through Experian IdentityWorks, and only for individuals who signed up for such monitoring by April 14, 2021. Compl., ECF No. 2 ¶ 29; Notice Letter, ECF No. 22-3.

Plaintiff brought this action on behalf of himself and all other similarly situated current and former students of Syracuse University with personally identifying information that may have been compromised as a result of the Data Incident, claiming (1) negligence in the handling of Plaintiff's Sensitive Information; (2) breach of express contract; (3) breach of implied contract; (4) violation of New York General Business Law ("GBL") § 899-AA; and (5) violation of GBL § 349.

**B.    Procedural History**

On September 2, 2021, Plaintiff Trevor Miller, on behalf of himself, and on behalf of all others similarly situated, commenced this litigation in the Supreme Court of the State of New York, County of Onondaga. On September 29, 2021, Defendant removed the Lawsuit to the United States District

---

[2] Defendant's letter notification explained to Plaintiff and Class Members its investigation reviewed the emails and attachments contained in the email account to identify individuals whose information may have been accessible to the unauthorized party. *See* Notice Letter, ECF No. 22-3. Defendant notified Plaintiff that on January 4, 2021, it determined that an email and/or attachment contained his name and Social Security number. *Id.* The letter notification also offered one year of credit monitoring and identity theft resolution services to those individuals whose Sensitive Information was accessed by the cybercriminals but only if they accepted this offer by April 14, 2021. *Id.* Further, Defendant instructed all individuals to monitor their accounts and credit reports and explained that federal law entitled individuals to one free credit report per year, that individuals have a right to place a security freeze on their credit reports, and that individuals have the option of placing fraud alerts on their credit files. *Id.*

Court for the Northern District of New York, asserting federal jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"). *See* Notice of Removal, ECF No. 1.

On February 3, 2022, Defendant filed a Motion to Dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6). *See* Mot. to Dismiss, ECF No. 22. On March 20, 2023, the Court granted in part and denied in part Defendant's Motion to Dismiss, dismissing only Plaintiff's causes of action under GBL 899-aa and N.Y. C.P.L.R. 6301. *See* Memorandum-Decision and Order, ECF No. 34, at 44.

Throughout this litigation, the Parties participated in an informal exchange of documents and settlement negotiations. *See* Order, ECF No. 38. On July 28, 2023, the Parties notified the Court that they had reached a tentative settlement in principle. *See* Status Report, ECF No. 42 ¶ 2.

On July 31, 2023, the Court stayed the above-captioned caption to allow the Parties to continue finalizing the terms of the settlement and drafting the settlement agreement, including negotiating and drafting settlement notices and the claim form and selecting a settlement administrator. *See id.* ¶ 4; Text Order, ECF No. 43. The Court has extended the stay to December 14, 2023. ECF No. 52. In that time, the Parties have finalized the terms of the Settlement, prepared the necessary documents, and selected a settlement administrator—P&N—to administer the Settlement.

## C.    **The Settlement**

As described in further detail below and in the Settlement Agreement, this Settlement provides immediate benefits to the Settlement Class, including a cash payment reimbursement for documented Ordinary Losses, documented Extraordinary Losses, and Attested Lost Time spent attributable to the Data Incident. Settlement Agreement ("SA") § 2.1. Specifically, Class Members may submit claims to receive a payment of up to $1,000 for documented Ordinary Losses that were incurred as a result of the Data Incident. *Id.* § 2.1.1(a). Class Members are also entitled to claim payment for up to five

4

hours of Attested Lost Time spent dealing with the Data Incident, at a rate of $20.00 per hour.  *Id.* §

2.1.1(b).  Attested Lost Time claims need only include a brief description of (1) the action taken in

response to the Data Incident (either in checkbox style or written if no checkbox is applicable); (2)

the time associated with each action; and (3) an attestation that the time was spent responding to or

addressing issues relating to the Data Incident.[3]  *Id.*  Class Members are also eligible to receive

reimbursement of up to $10,000 for Extraordinary Losses reasonably traceable to the Data Incident

upon submitting reasonable documentation.  *Id.* § 2.1.2.

The Settlement provides Class Members further benefits in the form of meaningful

information security improvements by Defendant.  Considering the Data Incident and Plaintiff's

allegations, Defendant agreed to provide sufficient documentation to demonstrate that it either

implemented or will implement various security related measures.  *Id.* § 2.3.  As part of the Settlement,

Defendant will also separately pay all costs and expenses relating to notice and settlement

administration.  *Id.* § 2.5.

The Parties have selected P&N as the Claims Administrator.  *Id.* § 1.3.  P&N is a company

experienced in administering class action claims generally and specifically those of the type provided

for and made in data-breach litigation.  *Id.*  P&N shall receive, review, and approve or reject Claim

Forms (*see* Exhibit C to the Settlement Agreement) pursuant to the standards and procedures set forth

in the Settlement Agreement.  *Id.* § 2.4.

The Proposed Settlement Class consists of:

All persons who were sent written notification by Syracuse that their Private
Information was potentially compromised as a result of the Data Incident discovered
by Syracuse in September 2020.  The Settlement Class specifically excludes:  (i)
Syracuse, the Related Parties, and their officers and directors; (ii) all Settlement Class
Members who timely and validly request exclusion from the Settlement Class; (iii) any
judges assigned to this case and their staff and family; and (iv) any other Person found

---

[3] Time spent claims are included in the $1,000 maximum for documented Ordinary Losses.  SA
§ 2.1.1(b).

by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge.

*Id.* § 1.25. Plaintiff estimates that the Class contains approximately 9,800 members who would be entitled to receive payment under the Settlement. Garber Decl. ¶ 8.

### III.    ARGUMENT

#### A. Legal Standards

"Preliminary approval requires only an 'initial evaluation' of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties." *Hadel et al. v. Gauco, LLC*, No. 15-3706, 2016 U.S. Dist. LEXIS 33085 at *1 (S.D.N.Y. Mar. 14, 2016) (citation omitted). Compromise and settlement of class actions is also encouraged by the courts and favored by public policy. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (emphasizing the "strong judicial policy in favor of settlements, particularly in the class action context" (internal quotation marks omitted)). District courts have the discretion to approve proposed class action settlements, and preliminarily approve such settlements to allow notice to be issued to the class and for class members to either object to or opt-out of the settlement. *See Kelen v. World Fin. Network Nat'l Bank*, 302 F.R.D. 56, 58 (S.D.N.Y. 2014). After the notice period, the Court will be able to evaluate the Settlement with the benefit of the class members' input. *Flynn v. New York Dolls Gentlemen's Club*, No. 13-6350, 2014 U.S. Dist. LEXIS 142588, at *1 (S.D.N.Y. Oct. 6, 2014).

The first step in settling a class action is preliminary approval, through which the court must "determine that a class action settlement is fair, adequate, and reasonable, and not a product of collusion." *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000). Courts in this Circuit evaluate fairness, adequacy, and reasonableness according to the nine "*Grinnell* factors," which are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the

defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."

*Wal-Mart Stores, Inc.*, 396 F.3d 96 at 117 (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) ("*Grinnell*") (citation omitted)), abrogated on other grounds by *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

The Court must also consider the factors enumerated in Rule 23(e)(2), which "adds to, rather than displace[s] the *Grinnell* factors." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019). Rule 23(e)(2) "focus[es] the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *See* Fed. R. Civ. P. 23(e)(2), Advisory Committee Note. These "core concerns" are stated in Rule 23(e)(2):

(A)    the class representatives and class counsel have adequately represented the class;
(B)    the proposal was negotiated at arm's length;
(C)    the relief provided for the class is adequate, taking into account:
    i.    the costs, risks, and delay of trial and appeal;
    ii.    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims, if required;
    iii.    the terms of any proposed award of attorney's fees,
    iv.    including timing of payment; and
    v.    any agreement required to be identified under Rule 23(e)(3); and
(D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Finally, pursuant to Federal Rule of Civil Procedure 23(e)(1)(B), before a court directs notice to the class, a court must be satisfied that it will likely be able to certify the class for settlement purposes. Fed. R. Civ. P. 23(e)(1)(B). Where a class is proposed in connection with a motion for preliminary approval, "a court must ensure that the requirements of Rule 23(a) and (b) have been met." *Denney v. Deutsche Bank AG,* 443 F.3d 253, 270 (2d Cir. 2006). Class certification is appropriate

7

under Rule 23(a) if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims . . . of the representative parties are typical of the claims . . . of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."

Fed. R. Civ. P. 23(a)(1)-(4).  Here, as argued *infra*, the Court should preliminarily approve the proposed Settlement Agreement, as it is substantively fair, adequate, and reasonable, and the Court should direct notice to the Class, as the Court will be able to certify the Class for settlement purposes.

**B.    The Proposed Class Action Settlement Should Be Preliminarily Approved.**

    **1.    The Proposed Settlement Terms Are Substantively Fair, Adequate, And Reasonable.**

        **i.    Complexity, Expense, And Likely Litigation Duration (Grinnell Factor 1)**

"Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) ("There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation.").  Further, courts consistently hold that unless the proposed settlement is clearly inadequate, its acceptance and approval are preferable to the continuation of lengthy and expensive litigation with uncertain results.  *TBK Partners, Ltd. v. Western Union Corp.*, 517 F. Supp. 380, 389 (S.D.N.Y. 1981), *aff'd,* 675 F.2d 456 (2d Cir. 1982).

The Settlement Agreement provides substantial monetary benefits to the Settlement Class while avoiding the significant expenses and delays associated with trial.  The resolution of this action affords the Class concrete relief now rather than the potential for relief in the future.  While Plaintiff's Counsel is confident that Plaintiff would succeed, further litigation entails risks and delays in relief to Plaintiff and the Class.  Data breach cases, such as this, can be factually complex, requiring protracted

and costly litigation. They also typically face significant legal uncertainties, including pleading and pretrial motions, such as the granting of the motion to dismiss in this case, related appeals, obtaining class certification, and bringing and/or opposing a summary judgment motion. This would also result in significant expenses to all Parties and consumption of judicial resources. Plaintiff expects that a judgment for either party would likely be appealed, extending the costs and duration of the litigation.

In reaching their agreement, the Parties considered the uncertainty and risks in litigation and the costs each party will incur if litigation continues, and the Parties both concluded that it is in their mutual interest to resolve the litigation of the claims in the manner outlined in the Settlement Agreement. Thus, the proposed Settlement Agreement is fair, reasonable, and adequate considering the complexity and expense of litigation, and this *Grinnell* factor weighs in favor of preliminary approval of the proposed Settlement.

### ii.    The Reaction Of The Class (*Grinnell* Factor 2)

While the reaction of absent class members cannot be conclusively gauged until notice has been sent, the fact that Plaintiff and his experienced counsel support the Settlement Agreement is a strong indication that members of the Settlement Class will also view it positively. Plaintiff is not currently aware of any opposition to the proposed Settlement. At the stage of final approval, the Court will have additional information, including Class Members' reactions.

### iii.    The Stage Of The Proceedings And Amount Of Discovery Completed (*Grinnell* Factor 3)

The third *Grinnell* factor focuses on "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Torres v. Gristede's Operating Corp.*, No. 04-3316, 2010 U.S. Dist. LEXIS 139144, at *5 (S.D.N.Y. Dec. 21, 2010), *aff'd*, 519 F. App'x 1 (2d Cir. 2013) (citation omitted). Prior to trial, "negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 (internal quotation marks

and citation omitted).

Here, before agreement on the Settlement, the Parties litigated for more than two years. The legal issues have been vetted through motion practice, including a motion to dismiss, and extensive discovery, and the Parties have obtained the factual information required to evaluate the strengths and weaknesses of the claims and defenses. Garner Decl. ¶¶ 3-4. This knowledge allowed Plaintiff and his counsel to assess the value of the Class's claims and the risks of continued litigation and determine that the Settlement is fair, reasonable, adequate, and in the Settlement Class's best interest. *Id.* ¶¶ 7-10. Therefore, the decision to settle was an informed decision by the Parties, and this *Grinnell* factor weighs in favor of preliminary approval.

### iv. Plaintiff Would Face Real Risks If The Case Proceeded (*Grinnell* Factors 4 And 5).

In evaluating the fourth and fifth *Grinnell* factors, the risks of establishing liability and damages, courts "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 177 (internal quotation marks and citation omitted). Here, as in all litigation, there are certainly inherent risks in continuing further litigation. *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997).

Defendant has vigorously litigated this case, as seen in its partially-successful Motion to Dismiss. Plaintiff could still lose entirely if, *inter alia*, the Court finds that Defendant's cyber security systems were reasonable or compliant with relevant statutes or that Plaintiff is required to prove individualized damages. Plaintiff faces numerous risks in pleading, class certification, and a likely summary judgment motion by Defendant. Moreover, while Plaintiff is confident that an experts' findings would withstand scrutiny, proving liability and damages is nonetheless a substantial and daunting undertaking. Courts recognize that "[w]hen the success of a party's case turns on winning a so-called 'battle of experts,' victory is by no means assured." *In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 266-7 (S.D.N.Y. 2012) (holding that such disputes "weigh in

favor of approval.").

Plaintiff is confident he would ultimately prevail at trial, but the Settlement Agreement avoids the risks inherent in further litigation. After careful consideration and arm's-length negotiations, Plaintiff and his counsel concluded the resulting Settlement alleviates these risks and provides a substantial benefit to the Settlement Class in as timely a fashion as possible. Thus, this *Grinnell* factor weighs in favor of the Settlement and favors preliminary approval.

### v.    The Risks Of Maintaining A Class Through Trial (*Grinnell* Factor 6)

The sixth *Grinnell* factor evaluates the risk of maintaining the class status through trial. Courts must consider the possibility of decertification, and the greater the possibility of decertification, the more this factor weighs in favor of settlement approval. *Charron v. Pinnacle Grp. NY LLC*, 874 F. Supp. 2d 179, 200 (S.D.N.Y. 2012), *aff'd sub nom. Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013).

Plaintiff and counsel are confident they could certify and maintain the matter as a class through trial. Nonetheless, they recognize the substantial hurdles before them. Indeed, "[c]lass action suits have a well-deserved reputation as being most complex." *D'Angelo v. Hunter Bus. Sch., Inc.*, No. 21-3334, 2023 U.S. Dist. LEXIS 131029, at *13 (E.D.N.Y. July 28, 2023) (internal quotation marks and citation omitted).

Obtaining a ruling on class certification by the Court could only be reached after additional discovery and full briefing. Were Plaintiff's claims to survive to the class certification stage, Defendant would oppose any motion for class certification, for various possible reasons, including its contention that individualized issues predominate over common issues and that this action would not be manageable as a class action. Even if the Court certified a class, Defendant would likely challenge certification through a Rule 23(f) petition and/or move to decertify the class after further discovery and motion practice—necessitating additional briefing and time, with an uncertain result. The proposed Settlement eliminates these risks and their accompanying expenses and delays. Therefore,

this *Grinnell* factor also weighs in favor of preliminary approval.

###### vi. SU's Ability To Withstand A Greater Judgment (*Grinnell* Factor 7)

Although Defendant could likely withstand a greater judgment, this factor, "standing alone, does not suggest that the settlement is unfair." *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9. Where the settlement is otherwise fair and the defendant could with likely withstand a greater judgment, "this factor is neutral and does not preclude final settlement approval." *Manley v. Midan Rest. Inc.*, 2017 U.S. Dist. LEXIS 44560, at *14-15 (S.D.N.Y. Mar. 27, 2017). Given the case status, strengths and weaknesses of the claims and defenses, appeals process, and protracted litigation generally, Plaintiff and his counsel believe that the Settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class. As such, this factor is neutral.

###### vii. The Reasonableness Of The Settlement Considering The Possible Recovery And Attendant Litigation Risks (*Grinnell* Factors 8 And 9)

*Grinnell* factors eight and nine, regarding the range of reasonableness of the settlement considering the best possible recovery and a possible recovery considering the litigation risks, are often combined for analytical purposes. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 47–48; *Stinson v. City of New York,* 256 F. Supp. 3d 283, 294 (S.D.N.Y. 2017). With respect to the settlement's reasonableness, there is "a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart Stores, Inc.*, 396 F.3d 96 at 119 (citation omitted). Judging whether a settlement amount is reasonable "is not susceptible of a mathematical equation yielding a particularized sum." *In re Michael Milken & Assocs. Securities Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993); *see Grinnell*, 495 F.2d 448, 455 n.2 (2d Cir. 1974) ("There is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.").

When the Settlement benefits are weighed against the pending litigation risks and potential

alternative outcomes, the proposed Settlement is more than reasonable. For example, absent this Settlement Agreement, Defendant could prevail on its legal arguments to defeat liability entirely, resulting in no recovery for Class Members whatsoever. In light of these possibilities, the Parties found the Settlement amount to be more than reasonable. Moreover, where a settlement assures immediate payment to settlement class members—as here—and does not "sacrific[e] speculative payment of a hypothetically larger amount years down the road," the settlement is reasonable under this factor. *See Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05-3452. 2008 U.S. Dist. LEXIS 23016, at *13 (S.D.N.Y. Mar. 24, 2008) (internal quotation marks and citation omitted).

Therefore, *Grinnell* factors 8 and 9 also weigh in favor of preliminary approval. Each non-neutral *Grinnell* factor weighs in favor of approval, and the Court should grant preliminary approval.

### 2.    The Remainder Of The Rule 23(E)(2) Factors Support Preliminary Approval.

### i.    Plaintiff And His Counsel Have Adequately Represented The Class.

Plaintiff and his counsel adequately represented the Settlement Class, satisfying Rule 23(e)(2)(A). But for the courage and initiative of Plaintiff, the Settlement Agreement would not have been reached. Plaintiff expended considerable time and effort, recounting the facts of his experiences during discovery, reviewing factual issues in connection with his complaint, and staying informed and involved with case developments, including settlement negotiations.

With respect to Plaintiff's counsel, "the focus . . . is on the actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23, Advisory Committee Note. Plaintiff's counsel engaged in extensive motion and discovery practice before settlement. Garber Decl. ¶ 4. Plaintiff's counsel filed the complaint, survived a motion to dismiss, and engaged in relevant technical discovery to quantify damages to the Class. *Id.* Plaintiff's counsel also prepared for and engaged in arm's-length settlement negotiations with Defendant. *Id.* ¶ 5. Thus, they fully comprehended the strengths, weaknesses, and value of the Actions before entering into the Settlement. Plaintiff and his counsel

13

adequately represented the Settlement Class.

### ii. The Proposal Was Negotiated At Arm's Length.

"A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc.*, 396 F.3d 96 at 116 (internal quotations marks and citation omitted). Therefore, preliminary approval of a proposed settlement of a class action should be granted "where it 'appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval[.]" *In re Nasdaq Market–Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) (citation omitted).

The Parties' Settlement Agreement is the product of serious, informed, non-collusive negotiations. While the Parties scheduled a session with an experienced neutral mediator, Bennett G. Picker of Stradley Ronon, for July 20, 2023, they reached a tentative settlement on their own in advance of that date and therefore advised Mr. Picker that they would be canceling the mediation. Garber Decl. ¶ 5. The Parties continued negotiation through counsel and came to agree upon the instant settlement terms. *Id.* ¶ 6. In doing so, the Parties engaged in meaningful discovery, which "put the parties in a unique position to weigh the strengths and weaknesses of the case and thus addressed whether settlement was the better option as opposed to proceeding to trial." *See D'Angelo v. Hunter Bus. Sch., Inc.*, 2023 U.S. Dist. LEXIS 131029, at *16-17 (citation omitted); Garber Decl. ¶ 4. The Settlement Agreement was negotiated at arms-length, and thus, the presumption of fairness, adequacy, and reasonableness should apply.

### iii. The Allocation Plan Is Fair And Adequate.

"To warrant approval, the plan of allocation must also meet the standards by which the settlement was scrutinized — namely, it must be fair and adequate . . . . An allocation formula

need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re WorldCom, Inc. Sec. Litig.*, 388 F.Supp.2d 319, 344 (S.D.N.Y. 2005) (internal quotation marks and citations omitted).

Here, the allocation plan is fair and adequate because each Class Member is eligible to receive the same benefits, specifically a cash payment for documented Ordinary Losses, documented Extraordinary Losses, and Attested Lost Time attributable to the Data Incident, as well as the information security improvements to be taken or already taken by Defendant, described *supra*. SA § 2.3. The Settlement treats each Class Member equally, while still accounting for potential differences in ordinary and extraordinary expenses each Class Member potentially incurred. Proposed Class Counsel recommends this allocation formula. *See* Garber Decl. ¶ 12.

### iv.    The Proposed Form And Method Of Providing Notice To The Proposed Class Are Appropriate.

Rule 23(e)(1)(B) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(b). As shown, approval of the settlement under Rule 23(e)(2) and certification of the Class for settlement purposes are both appropriate (and hopefully likely). Thus, the Court should direct notice to Class Members.

Rule 23(c)(2)(B) further requires that class members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). While there are no rigid rules in determining compliance with Rule 23 or constitutional requirements, the settlement notice needs to "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d at 113 (internal quotation marks and citation omitted).

Here, the proposed notice program does just that.  As recited in the Settlement Agreement and described herein, the proposed notice will inform Class Members of the Settlement's substantive terms and their options—including remaining part of the Settlement Class, objecting to the Settlement, or opting out of the Settlement; how to submit claims to receive benefits; and how to obtain additional information and/or answers to frequently asked questions about the Settlement.  SA § 3.2.  As detailed further in the Settlement Agreement, the proposed notice program consists of (1) Long Notice to be available on the Settlement Website (*see* Exhibit B to the Settlement Agreement), and (2) Short Notice via individual postcard notice for those Class Members for whom a physical address can be identified with reasonable effort (*see* Exhibit A to the Settlement Agreement).  *Id.*  The proposed notice program is designed to directly reach a very high percentage of Class Members.  Therefore, the Court should approve the notice program and the form and content of the proposed notices.

**v.    The Proposed Attorneys' Fees And Expenses, And Service Awards Are Fair And Adequate.**

Plaintiff will apply to the Court for an award of reasonable attorneys' fees and reimbursement of litigation costs in an amount not to exceed $295,000.  SA § 7.2.  Plaintiff will also request a service award not exceeding $5,000 for Plaintiff Trevor Miller in recognition of the time and efforts prosecuting this matter and assisting with mediation, and risks taken by him in commencing the Action.  *Id.* § 7.3.  As set forth in the Settlement Agreement, subject to Court approval, Defendant agreed not to oppose requests by Plaintiff in these amounts.  *Id.* §§ 7.2-3.  Plaintiff worked diligently and extensively with Plaintiff's counsel throughout this litigation, including gathering information pertaining to the factual allegations of the Complaint and other putative Class Members' experiences, responding to attorney inquiries, participating in the discovery process, and representing the Class's interests in reviewing and approving the Settlement Agreement.  Garber Decl. ¶ 13.  Absent these efforts, the significant Settlement awards paid to Settlement Class would not be possible.  The $5,000 service award requested here is also consistent with awards authorized in numerous reported case

16

decisions in this Circuit. *See, e.g.*, *Moses v. N.Y. Times Co.*, 79 F.4th 235, 253-56 (2d Cir. 2023) (affirming approval of a $5,000 incentive award); *James v. China Grill Mgmt.*, No. 18-455, 2019 U.S. Dist. LEXIS 72759, at *10 (S.D.N.Y. Apr. 30, 2019) (authorizing incentive awards of $5,000) (collecting cases); *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 124-125 (S.D.N.Y. 2001). The Settlement Agreement provides that court approval of Plaintiff's attorneys' fees, costs, and expenses, and the service award to Plaintiff, are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement. *Id.* § 7.5.

### vi. The Parties Have No Additional Agreements.

The only agreement related to this litigation is the proposed Settlement Agreement, attached as Exhibit A to the Garber Declaration, and there are no side agreements regarding attorneys' fees or costs related to this proposed Settlement. Garber Decl. ¶ 7.

### vii. Proposed Settlement Class Members Are Treated Equitably.

Rule 23(e)(2)(D) instructs the court to consider whether the settlement agreement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here, the proposed Settlement treats Class Members equally because they all have the option to make a claim for any of the applicable benefits. SA § 2.1.

## C. THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS.

Pursuant to Rule 23(e)(1)(B), before a court directs notice to the class, the court must be satisfied that it will likely be able to certify the class for settlement purposes. Fed. R. Civ. P. 23(e)(1)(B). To obtain class certification, the plaintiff must demonstrate the Rule 23(a) elements of numerosity, commonality, typicality, and adequacy of representation. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). "Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Id.* Rule 23(b)(3)'s requirements are met upon demonstration "that questions of law or fact common to the members of the proposed class 'predominate over any questions affecting only

individual members,' and that a class resolution is 'superior to other available methods for the fair and efficient adjudication of the controversy.'" *Seaman v. Nat'l Collegiate Student Loan Tr. 2007-2*, No. 18-1781, 2023 U.S. Dist. LEXIS 43041, at *71 (S.D.N.Y. Mar. 13, 2023) (citation omitted). There are also practical purposes for conditional settlement class certification and appointment of class counsel, "including avoiding the costs of litigating class status while facilitating a global settlement, ensuring all Class members are notified of the terms of the proposed Agreement, and setting the date and time of the final approval hearing." *Carrasco v. Endurance U.S. Holdings Corp.*, No. 17-7319, 2020 U.S. Dist. LEXIS 46905, at *2 (S.D.N.Y. Mar. 17, 2020).

Courts routinely certify Rule 23 classes in data breach cases for settlement and trial purposes. *See, e.g., In re Solara Med. Supplies Data Breach Litig.,* No. 19-2284, 2022 U.S. Dist. LEXIS 72834, at *30 (S.D. Cal. Apr. 20, 2022); *In re Capital One Consumer Data Sec. Breach Litig.*, No. 19-2915, 2022 U.S. Dist. LEXIS 234943, at *38 (E.D. Va. Sep. 13, 2022); *Fero v. Excellus Health Plan, Inc.*, 502 F. Supp. 3d 724, 752 (W.D.N.Y. 2020); *In re Sonic Corp. Customer Data Breach Litig.*, No. 17-02807, 2020 U.S. Dist. LEXIS 204169, at *17 (N.D. Ohio Nov. 2, 2020).

As discussed *infra*, the settlement class certification requirements are met and Defendant consents to provisional certification of the Settlement Class for settlement purposes. SA § 2.6; *see* Newberg § 11.27 ("[T]he parties may stipulate that it be maintained as a class action for the purpose of settlement only."); *County of Suffolk v. Long Island Lighting Co.*, 710 F. Supp. 1422, 1424 (E.D.N.Y. 1989), aff'd in part, rev'd in part on other grounds, 907 F.2d 1295 (2d Cir. 1990).

**1. The Proposed Settlement Class Meets The Requirements Of Rule 23(A).**

**i.    The Settlement Class Is Sufficiently Numerous.**

The members of a proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Courts do not require 'evidence of exact class size or identity of class members.'" *Sykes v. Mel Harris & Assocs. LLC*, 285 F.R.D. 279, 286 (S.D.N.Y. 2012) (citation

omitted).  Numerosity is satisfied if the proposed class consists of forty or more members.  *See Consol. Rail Corp. v. Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  Here, there are approximately 9,800 Class Members, making joinder impracticable and satisfying numerosity.  *See* Garber Decl. ¶ 8.

        **ii.    Commonality Is Satisfied.**

Commonality requires the parties seeking class certification to show that there are "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Rule 23(a)(2) is a "low hurdle."  *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 131 (S.D.N.Y. 2014).  This factor is satisfied if there is a question "'capable of classwide resolution,' meaning that 'determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'"  *Seaman*, 2023 U.S. Dist. LEXIS 43041 at *71 (quoting *Wal-Mart Stores*, 564 U.S. at 350). "[C]ommonality does not mandate that all class members make identical claims and arguments, only that common issues of fact or law affect all class members."  *Stinson v. City of N.Y.*, 282 F.R.D. 360, 369 (S.D.N.Y. 2012) (internal quotation marks and citation omitted).

Here, Plaintiff's claims easily satisfy the "commonality" prong because all Class Members were victims of the same Data Incident, and there are multiple questions of law and fact common to Plaintiff and the Settlement Class stemming from the Data Incident.  Questions pertaining to Defendant's failure to adequately protect Plaintiff's and Class Members' Private Information and whether this failure was lawful, apply to all individuals in the class and are classic common questions of the type contemplated by Rule 23(a)(2).  *See Seaman*, 2023 U.S. Dist. LEXIS 43041, at *73 ("[B]ecause plaintiffs are 'challenging a practice of defendants,' not merely defendants' 'conduct with respect to the individual plaintiff[s],' the commonality requirement is met." (citations omitted)). Plaintiff and the Settlement Class have demonstrated the same course of conduct by Defendant leading to the injuries suffered resulting from the Data Incident, namely, its failure to maintain sufficient cyber-security procedures and policies in place to safeguard the Sensitive Information it

possessed and their failure to promptly notify the victim of the Data Incident.

### iii.    Typicality Is Satisfied.

The claims of the Plaintiff must be "typical of the claims of . . . the class."  Fed. R. Civ. P. 23(a)(3).  Typicality is satisfied "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993).  Where "alleged injuries derive from a unitary course of conduct by a single system, typicality is generally found." *Brooklyn Ctr. for Indep. of the Disabled v. Bloomberg*, 290 F.R.D. 490, 419 (S.D.N.Y. 2012); *see Ebin v. Kangadis Food, Inc.*, 297 F.R.D. 561, 565-66 (S.D.N.Y. 2014) (finding typicality because the "claims ar[o]se out of the same course of conduct by the defendant and [were] based on the same legal theories").

Plaintiff presents claims typical of the Settlement Class, as they were all victimized in the same manner by the Data Incident.  Plaintiff and Class Members also all suffered substantially the same injuries arising from the loss of their PII, occurring in "the same course of events" from September 24 to September 28, 2020.  There is no material variation between Plaintiff's claim and the claims of Class Members, and their claims depend on the same legal theory.  Plaintiff and Class Members assert the same forms of relief and share the same interest in the information security measures Defendant will implement or has already implemented to protect the PII remaining in Defendant's possession.  Thus, Rule 23(a)(3)'s typicality requirement is met.

### 2.    The Adequacy Requirement Is Met And Plaintiff Should Be Provisionally Appointed As Settlement Class Representative.

Class representatives must "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  To determine adequacy, the Court considers whether "(1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Basso v. New York Univ.*, 363 F. Supp. 3d 413, 423 (S.D.N.Y. 2019).  "[A]dequacy is satisfied unless plaintiff's interests are antagonistic to the interest of

other members of the class." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 90 (2d Cir. 2015).

Here, Plaintiff has no antagonistic interests in relation to other Class Members. Plaintiff and Class Members are current and/or former employees of Defendant whose personal information was potentially compromised because of the Data Incident. All seek to recover damages resulting from the Data Incident. Plaintiff is sufficiently interested in the outcome of this case to ensure his vigorous advocacy. Plaintiff is not subject to unique defenses and he and his counsel have and continue to vigorously prosecute this case on behalf of the class. Plaintiff's interests align with those of the other Class Members. Likewise, Plaintiff's counsel, Finkelstein, Blankinship, Frei-Pearson, & Garber, LLP ("FBFG") and Keller Postman LLC ("KP") are experienced in prosecuting complex class actions nationwide, including data breach class actions, in both state and federal courts. *See* FBFG Firm Resume, Exhibit C to Garber Decl.; KP's Firm Resume, Exhibit D to Garber Decl.. Thus, Plaintiff and his counsel can fairly and adequately represent the class.

Plaintiff actively participated in litigation and helped in representing the interests of the Settlement Class. Specifically, Plaintiff provided Class Counsel with information necessary to draft the complaint and represented the Settlement Class in settlement discussions. Plaintiff provided all information needed by counsel to pursue this result, ending up with a Settlement that is fair, adequate, and reasonable. As such, the Court should provisionally appoint Plaintiff as the Settlement Class representative. *See Baffa v. Donaldson, Lufkin Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).

### i.    Class Members Are Readily Identifiable And Ascertainable.

Ascertainability requires that the class is "readily identifiable, such that the court can determine who is in the class and, thus, bound by the ruling." *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 407 (S.D.N.Y. 2015) (internal quotation marks and citation omitted). "The standard for ascertainability is not demanding and is designed only to prevent the certification of a class whose membership is truly indeterminable." *Id.* (citation omitted). A class is ascertainable when it is "defined by objective criteria

that are administratively feasible . . . and identifying its members would not require a mini-hearing on the merits of each case." *Charrons v. Pinnacle Grp., NY LLC*, 269 F.R.D. 221, 229 (S.D.N.Y. 2010) (internal quotation marks and citations omitted).

Here, the Settlement Class is ascertainable. It is defined by objective criteria; namely, whether they were sent written notification by Defendant that their Private Information was potentially compromised as a result of the Data Incident. *See* SA § 1.25. Defendant has records identifying Class Members and their addresses, which further makes Class Members ascertainable.

**D.    The Proposed Settlement Class Meets The Requirements of Rule 23(b)(3).**

**1.    Common Issues Predominate Over Any Individual Questions.**

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997) (citing Fed. R. Civ. P. 23(b)(3)). Predominance thus requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *In re Visa Check MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001). Therefore, where the plaintiff and class members are unified by common facts and a common legal theory, the predominance requirement is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

In this case, the predominance requirement is satisfied because Defendant's liability turns on common questions, as discussed *supra*, such as the effectiveness of their data security systems and the lawfulness of their actions and omissions, and the legal issues faced by the Settlement Class arise from the same set of facts related to the Data Incident. Because these common questions will predominate over any individual questions, class certification for settlement purposes is appropriate.

**2.    A Class Action Is Superior To Other Available Methods Of Adjudication.**

A class action must be "superior to other available methods for fairly and effectively

adjudicating the controversy." Fed R. Civ. P. 23(b)(3). The Court must consider several relevant factors including class members' interest in bringing individual actions, the extent of existing litigation by class members, the desirability of concentrating the litigation in one forum, and potential issues with managing a class action. *Id.* In this case, each of these enumerated factors weighs in favor of finding that superiority is satisfied.

First, given the per-resident recovery in this case, bringing an individual action against Syracuse is not economically rational in light of attorneys' fees and other litigation costs. It is well settled that a class action is the superior method of adjudication where, as here, "the proposed class members are sufficiently numerous and seem to possess relatively small claims unworthy of individual adjudication due to the amount at issue . . . [and] there [is] reason to believe that class members may lack familiarity with the legal system, discouraging them from pursuing individual claims." *Gomez v. Lace Ent., Inc.*, No. 15-3326, 2017 U.S. Dist. LEXIS 5770, at *27-28 (S.D.N.Y. Jan. 6, 2017) (internal quotation marks and citation omitted). Certification of the Settlement Class will allow for efficient adjudication of claims that would likely not be brought due to prohibitive legal expenses, while also preserving scarce judicial resources. Plaintiff is unaware of any ongoing litigation against Syracuse regarding this Data Incident. Further, this forum is an appropriate and convenient forum for Plaintiff's claims to be litigated in because Defendant is a New York university. Lastly, "the [C]ourt need not consider the manageability" for a settlement-only class because the matter is not going to trial. *In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 88 (S.D.N.Y. 2009). Therefore, for these reasons set forth, a class action is a superior method of adjudicating the controversy.

## E.   <u>Proposed Class Counsel Should Be Provisionally Appointed As Class Counsel.</u>

The proposed class counsel must be "competent, willing and able to protect the interests of the absent class members." *Feder v. Elec. Data, Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005). Rule 23(g) enumerates four factors for evaluating the adequacy of proposed counsel:

1.      the work counsel has done in identifying or investigating potential claims in the action;
2.      counsel's experience in handling class actions, other complex litigation, and types of claims of the type asserted in the action;
3.      counsel's knowledge of the applicable law; and
4.      the resources counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(C)(i).  All of these factors militate in favor of appointing FBFG and KP as Class Counsel.  Both firms have adequately represented the Settlement Class and have extensive experience in litigating class actions, including data breach actions of similar size, scope, and complexity.  *See* Garber Decl. ¶¶ 14-20, 23-24.  Proposed Class Counsel have devoted significant resources towards prosecuting this action, including investigating Plaintiff's claims, pursuing those claims aggressively through motion practice, conducting informal discovery, participating in private mediation sessions, and negotiating the proposed Settlement over an extended period of time.  Accordingly, Plaintiff respectfully requests that the Court provisionally appoint Todd S. Garber and Andrew C. White, of FBFG, and Alex J. Dravillas, of KP, as Class Counsel.

**F.      The Proposed Notice Is The Best Practicable.**

The Court must direct the "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  The Court must also "direct notice in a reasonable manner to all class members who would be bound by the proposal" prior to approving a settlement.  Fed. R. Civ. P. 23(e)(1).

Here, the proposed notice to absent Class Members comports with the Federal Rules of Civil Procedure.  The notice program is comprised of two primary components: (1) Long Notice to be available on the Settlement Website, and (2) Short Notice via individual postcard notice for those Class Members for whom a physical address can be identified with reasonable effort.  SA § 3.2.  A toll-free help line will also be made available to provide Class Members with additional information about the Settlement and to respond to Class Members' questions.  *Id.*  The notice contains a description of the material terms of the Settlement, relevant dates, and the address of the Settlement

24

Website.  *Id.* § 3.2.  Class Members will have 60 days from commencement of the notice program to object or exclude themselves from the Settlement.  *Id.* §§ 4.1, 5.1.  This notice program provides the best practicable way of reaching the greatest number of Class Members.

## IV.    SCHEDULING AND FINAL FAIRNESS HEARING

The last step in the settlement approval process is the Final Fairness Hearing—when Settlement proponents may explain and describe in terms and conditions and offer argument in support of settlement approval, and Class Members may be heard in support of or in opposition to the Settlement.  The following sets forth the proposed schedule of events to occur to effectuate the Settlement Agreement.

| Event | Date |
|---|---|
| Notice program begins (Settlement Admin. to complete postcard notice, establish website, and toll-free phone line) | Within 45 days after entry of Preliminary Approval Order and to be substantially completed not later than 60 days after entry of Preliminary Approval Order. |
| Objection and Opt-Out Date | 60 days after notice program begins. |
| Claims Deadline (submit claim form) | 90 days after notice program begins. |
| Plaintiff's deadline to file motion for attorneys' fees and expenses and service award | 53 days after notice program begins. |
| Final Fairness Hearing | |

## V.    CONCLUSION

Accordingly, Plaintiff respectfully requests the Court enter an order substantially in the form as attached as Exhibit B to the Garber Declaration and Exhibit D to the Settlement, which: (1) grants certification of the Settlement Class for settlement purposes only; (2) grants preliminary approval of the proposed Settlement; (3) appoints Todd S. Garber and Andrew C. White of Finkelstein, Blankinship, Frei-Pearson & Garber, LLP and Alex Dravillas of Keller Postman, LLC as Class Counsel; (4) appoints Trevor Miller as Class Representative; (5) approves the Parties' proposed notice packet to the Settlement Class; (6) appoints Postlethwaite & Netterville, APAC as the Claims Administrator.

Dated: December 14, 2023

/s/ Todd S. Garber
Todd S. Garber
Andrew C. White
**FINKELSTEIN, BLANKINSHIP,**
**FRE-PEARSON & GARBER, LLP**
One North Broadway, Suite 900
White Plains, NY  10111
Telephone: 914.298.3281
tgarber@fbfglaw.com
awhite@fbfglaw.com

/s/ Alex J. Dravillas
Alex J. Dravillas
**KELLER POSTMAN LLC**
150 N. Riverside, Suite 4100
Chicago, IL  60606
Telephone: 312.741.5220
ajd@kellerpostman.com

*Counsel for Plaintiff Trevor Miller and the Putative Class*