# EXHIBIT D

# Keller | Postman

Firm Resume

# Table of Contents

About Keller Postman ..................................................................3

About Our Team ......................................................................4

Why Keller Postman ..................................................................5

Awards ...............................................................................6

Practice Areas .......................................................................7

Case Highlights ......................................................................9

Attorney Biographies ................................................................20

Keller|Postman

# About Keller Postman



**Keller Postman** is a leading complex litigation firm for plaintiffs, specializing in mass actions. We represent consumers, employees, and veterans in class actions, mass torts, and mass arbitrations, at the trial and appellate levels, in federal and state courts.

## Our Mission

To aggressively pursue our clients' claims, en masse, against the entities that have harmed them by driving innovation in the practice of law, devising cutting-edge strategies that don't follow the standard playbook, conceiving novel arguments, and pursuing unparalleled excellence in everything we do.

## Our Approach

Serving hundreds of thousands of clients in litigation and arbitration, Keller Postman has prosecuted high-profile antitrust, privacy, product-liability, employment, and consumer-rights cases and secured substantial settlements for our clients. Our firm also acts as plaintiffs' counsel in high-stakes public-enforcement actions.

Keller Postman seeks out complicated cases and takes on groundbreaking legal challenges where our legal and strategic counsel can add significant value. Our innovative approach combines high-end legal expertise with best practices in business operations and technology to deliver superlative representation for plaintiffs.

Our greatest asset is our team of smart, dedicated professionals. Keller Postman lawyers honed their skills at AmLaw 100 law firms, national trial boutiques, corporate in-house legal departments, prestigious government posts, and successful business startups. Every member of our team shares a commitment to client service and a spirit of determination, dedication, creativity, and excellence.

### OUR TEAM

**8** PARTNERS

**22** ASSOCIATES

**40** STAFF ATTORNEYS & COUNSEL

**45** LEGAL SUPPORT TEAM MEMBERS

**40** CLIENT SERVICES TEAM MEMBERS

**45** CASE MANAGEMENT TEAM MEMBERS

**111** BUSINESS, OPERATIONS & IT TEAM MEMBERS

### OUR OFFICES

CHICAGO, IL

WASHINGTON, D.C.

AUSTIN, TX

Keller | Postman



# About Our Team

## Keller Postman is home to one of the most exceptional teams representing plaintiffs in the United States.

We're powered by a talented team with top-notch credentials and real-world experience. Our lawyers have litigated "bet the company" cases for plaintiffs and defendants, studied and taught at some of the top law schools in the country, served at the highest levels of government, and managed more than $1 billion of litigation-related investments.

THE FIRM COMPRISES OVER
**FIVE DOZEN LAWYERS**
AND MORE THAN
**200 PROFESSIONAL STAFF MEMBERS**.

### CLIENT SERVICES & CASE MANAGEMENT TEAM
We have established large, in-house client-services and case-management teams to serve our clients from the early stages of litigation to the final moments of settlement distributions. We expertly and efficiently cover all aspects of our cases, including client intake, case workup, and litigation at all levels of the judiciary.

### TECHNOLOGY, DATA & ANALYTICS TEAM
Keller Postman operates a dedicated, in-house technology, data, and analytics team, led by an accomplished graduate of the Massachusetts Institute of Technology. Our firm utilizes cutting-edge technology and processes to ensure successful litigation for thousands of claims at once.

## OF KELLER POSTMAN'S PARTNERS AND ASSOCIATES:

### 80%
hail from **national defense-oriented law firms**, and 73% from AmLaw 100 firms and elite trial boutiques.

### 63%
were **law clerks** at a federal court of appeals or district court.

### 70%
attended a **Top 15 U.S. News ranked law school.**

### 4
of Keller Postman's partners were **law clerks at the Supreme Court of the United States.**

Keller | Postman

# Why Keller Postman

**CLIENTS FIRST APPROACH**
Our primary goal is always to achieve exceptional results for our clients—we are tireless in our pursuit of justice on their behalf. We move with speed and efficacy. We genuinely care about each individual client, and we demonstrate that by providing outstanding client service.

**FEARLESS INNOVATION**
We drive innovation in the practice of law, sharing an ambition to do things differently—and to do them better. It is not enough merely to advocate for our clients. We prize creativity, develop and harness our own technology, and commit the resources necessary to succeed.

**COMMITTED TO EXCELLENCE**
We pursue unparalleled excellence in everything we do. We challenge ourselves to perform at the highest level and deliver outstanding results. At every level of the firm, we take pride in serving as trusted advisors and provide exceptional client service.

**STRENGTH TO WIN**
Our team has the skills and resources to go head-to-head with the largest, most well-resourced corporations in the country. Plus, our lawyers have experience on both sides of the courtroom and the negotiating table, allowing us the unique ability to anticipate our opponents' moves.

## Industry Recognition



**THE NEW YORK TIMES**
Keller Postman is driven "by a legal reformist spirit and entrepreneurial zeal."

**WALL STREET JOURNAL**
"[Keller Postman is calling] companies on their bluff and saying, 'You think you're going to get out of liability by going to arbitration? We'll show you what the arbitration system can do when you face tens of thousands of claims.'"

**THE AMERICAN LAWYER**
"Part of the vision was to make plaintiff-side work attractive to folks with clerkship and Big Law experience like [Keller Postman's] founders. So far, the approach seems to be working."

**LAWDRAGON MAGAZINE**
"Accelerated by a well-curated culture of excellence, innovation, and service, Keller Postman [leads] litigation across some of the biggest product liability MDLs in history."

Keller | Postman

# Awards

We're proud of the recognition we've received as leaders of the plaintiffs' bar.



### ELITE TRIAL LAWYERS LAW FIRM OF THE YEAR

In 2021, the *National Law Journal* named Keller Postman the Trial Strategy Innovation Law Firm of the Year. And in 2022, Keller Postman was named the Privacy & Data Breach Law Firm of the Year.



### ELITE TRIAL LAWYERS RISING STARS & ELITE WOMEN

Our lawyers have been named 2021 & 2022 Elite Trial Lawyers' Rising Stars of the Plaintiffs' Bar and 2022 Elite Trial Lawyers' Elite Women of the Plaintiffs' Bar.

### NATIONAL LAW JOURNAL & AMERICAN LAWYER TRAILBLAZERS

Our team has been named 2021 and 2022 Plaintiffs' Lawyers Trailblazers and 2022 Employment Law Trailblazers by the *National Law Journal*. Our lawyers have also been named 2022 Midwest Trailblazers and South Trailblazers by *American Lawyer*.

   



### LAW360 MVP

Managing Partner **Warren Postman** was named the 2022 Law360 Technology MVP of the Year and the 2021 Law360 Employment MVP of the year.

### KELLER POSTMAN ATTORNEYS NAMED TO MANY EXCLUSIVE LEGAL DIRECTORIES,

including Chambers & Partners, National Trial Lawyers Top 100 and Top 40 under 40, Super Lawyers, Best Lawyers, and Lawdragon's 500 Leading Lawyers in America, 500 Leading Plaintiff Consumer Lawyers, and Leading Plaintiff Financial Lawyers.



### WOMEN WORTH WATCHING IN LEADERSHIP

Partner **Zina Bash** is named to the 2022 Women Worth Watching in Leadership by *Profiles in Diversity Journal*.



### SUPER LAWYERS®

Thirteen of Keller Postman's Attorney's were recognized by Illinois Super Lawyer for 2023. Four Partners as Super Lawyers and nine as Rising Stars.





# Practice Areas

# Practice Areas

At Keller Postman, we represent plaintiffs in complex litigation matters. Our diverse team has experience litigating cases across a wide variety of practice areas, which allows us to be flexible and responsive to our clients' needs. Regardless of the substantive claims involved, one thing is true about all our cases: they give us the opportunity to use our unique skills and resources to help our clients solve problems and vindicate their rights.

## Antitrust

We believe competition stimulates innovation, sparks improvements of products and services, and leads to more efficient means of delivery and production. We fight anti-competitive conduct through bringing antitrust claims against some of the largest and best-known corporations in the world—and we are confident in our team's vast experience, knowledge and capabilities to successfully litigate these cases.

## Arbitration

We help our clients level the playing field when contracts written by defendants force them into arbitration. Our team has successfully represented plaintiffs in complex arbitration proceedings throughout the United States, including wage-and-hour disputes, employee misclassification claims, consumer product disputes, and other types of contract-related disputes.

## Consumer Protection

We safeguard consumers from unfair corporate practices, corporate malfeasance, and any type of deceptive business practices. We work to protect consumer rights through arbitration and class action under federal and state laws. And our work specifically focuses on regulating emerging and increasingly dominant tech-based corporations that often push boundaries to take advantage of consumers in new or developing areas of law.

## Privacy

Technology continues to evolve and intertwine itself with our day-to-day. With these technological advances come a greater threat to privacy and data protection. Keller Postman is committed to protecting that fundamental right to privacy. Our attorneys' legal acumen matches our technical expertise, which allows us to skillfully litigate even the most complicated privacy claims.

## Product Liability

With extensive experience handling claims associated with products (including with suppliers, manufacturers, and sellers), our attorneys play key roles in some of the most significant product liability multidistrict litigation proceedings in the country. Our team continues to be selected to lead federal and state product-liability litigation through appointments to leadership positions.

## Public Institutions

We represent States, municipalities, and other government entities as plaintiffs in legal actions for the benefit of their constituents. In line with our commitment to the public good, our practice provides pivotal support—in terms of expert attorneys and resources—to public entities for the benefit of their people. We have developed the expertise to help public institutions navigate the legal landscape they face every day.

# Case Highlights

# Case Highlights

## AMAZON ALEXA MASS ARBITRATION

As reported by *The Wall Street Journal*, Keller Postman filed roughly 75,000 individual arbitration demands on behalf of Amazon Alexa users who had been recorded without permission. Faced with arbitrating so many individual claims at once, in May 2021, Amazon eliminated its arbitration clause, allowing consumers (for the first time) to pursue their rights in court. Keller Postman's arbitration practice has caused the world's largest retailer to shift away from forced arbitration—a once-unthinkable result that significantly benefits consumers.

After individual and class-action lawsuits against Amazon became permissible, Keller Postman filed a federal antitrust lawsuit against Amazon for the same illegal conduct (the very first lawsuit filed against the company since it began including an arbitration clause into contracts with consumers). In *De Coster et al. v. Amazon.com, Inc.*, Keller Postman represents individual consumers who were charged unfairly high prices by Amazon because of the company's most favored nation clause against third-party merchants. Our firm was also named Co-Lead Class Counsel. In conjunction with the filing of this lawsuit, Keller Postman also separately filed another 75,000 individual arbitration demands for related claims.

The matters have resolved. This matter is significant because of Amazon's move to drop its arbitration clause nationwide and restore access to the courts for over 140 million Amazon consumers. The unprecedented—and astounding—rescission by Amazon of its arbitration requirement marked a significant victory for consumers and access to justice. Across all of Keller Postman's arbitration matters to date, we've secured millions in settlements for more than 500,000 individuals.

## DE COSTER V. AMAZON.COM INC. & FRAME-WILSON V. AMAZON.COM INC.

**Leadership Role**: Keller Postman Partner Zina Bash named Interim Co-Lead Class Counsel in *De Coster v. Amazon.com Inc.*

Keller Postman filed a federal antitrust lawsuit against Amazon—*De Coster et al. v. Amazon.com Inc.*—after the company dropped its arbitration clause as a result of one of Keller Postman's largest arbitration campaigns representing more than 75,000 consumers in simultaneous individual arbitrations. In this lawsuit, Keller Postman represents a proposed class of Amazon shoppers alleging that the Amazon platform's unlawful imposition of 'most favored nation' pricing restrictions against third-party sellers blocks competition from other e-commerce marketplaces and inflates the prices paid by customers. The plaintiffs' allegation is that Amazon has exploited its market power to inflate prices on its own platform—and across the internet. Given the scale of this antitrust violation, the suit has the potential to be one of the largest antitrust cases in history.

Keller Postman later filed *Frame-Wilson v. Amazon.com Inc.* on behalf of individuals who purchased products from Amazon competitors (such as Ebay). These plaintiffs allege that because Amazon distorted market prices on competitor seller sites through its anticompetitive conduct, they paid far higher prices for their merchandise.



# Case Highlights Continued:

## INTUIT MASS ARBITRATION

Through deceptive web tactics, Intuit tricked thousands of lower-income Americans into paying to file taxes through TurboTax, though they were eligible to file for free. Faced with a putative consumer class action on behalf of 19 million consumers, Intuit compelled the dispute to individual arbitration. Keller Postman then filed individual arbitration demands at AAA for approximately 200,000 of those consumers.

In response, Intuit sought to send most of those consumers to small claims court and delay the arbitrations. In *Intuit, Inc. v. 9,933 Individuals*, the LA Superior Court denied Intuit's motion to force our clients' claims into small-claims court. It also rejected Intuit's argument that California's SB 707—which imposes severe penalties on companies that refuse to comply with their own arbitration agreements—is preempted. At oral argument, Judge Terry Green said Keller [Postman] deserves "a toast. Good work."

Intuit then tried to propose a settlement in the class action it had already compelled to arbitration. Our firm objected, arguing that Intuit should not be able to use a class-action settlement to frustrate individual class members' efforts to bring individual arbitrations against the company. Intuit's proposed $40 million class settlement was denied. In his opinion, Judge Charles Breyer directly addressed the significance of this matter: "This case illustrates the urgent need for Congress to reverse the U.S. Supreme Court's arbitration jurisprudence, which gives corporate defendants an unfair advantage over consumers, and undermines the class's ability to secure a more significant monetary result."

Furthermore, this is Keller Postman's largest "mass arbitration" matter to date – and an unprecedented number of simultaneous individual arbitrations against a single defendant. As litigation continued throughout 2021, the American Arbitration Association also implemented new arbitral rules for "multiple consumer filings" as a result of Keller Postman's ability to arbitrate so many matters simultaneously.

## BARR V. DRIZLY, LLC F/K/A DRIZLY, INC. ET AL

This class action lawsuit was filed in August 2020 against Drizly, the largest online alcohol delivery marketplace in North America. The complaint alleged that Drizly's security measures were deficient in protecting consumers' personal information and that the company was slow to report the breach. As a result of the data breach, customers were exposed to fraud, identity theft, and other injuries.

Drizly moved to compel arbitration. However, after Keller Postman made an appearance with co-counsel, Drizly agreed to settlement terms within a week. This matter further emphasizes how Keller Postman's innovative strategy in arbitration has come to the aid of consumers whose private information was stolen. We've leveled up our arbitration strategy through making appearances with co-counsel partners after defendants compelled arbitration. We're extremely proud that our firm's reputation in mass arbitration has helped to swiftly secure favorable resolutions for both consumers and employees—and has also prevented defendants from using arbitration to evade liability.

# Case Highlights Continued:

## STATE OF TEXAS V. GOOGLE LLC

**Leadership Role**: Partner Zina Bash & Partner Ashley Keller are Co-Lead Counsel for our State clients

Keller Postman represents the States of Texas, Idaho, Indiana, Mississippi, North Dakota, South Dakota, and South Carolina in the States' antitrust litigation against Google. Filed in the U.S. District Court for the Eastern District of Texas (and subsequently centralized in the Southern District of New York with similar private cases), the suit alleges that Google monopolized products and services used by advertisers and publishers in online-display advertising. The complaint also alleges that Google engaged in false, misleading, and deceptive acts while selling, buying, and auctioning online-display ads. Google also entered into an unlawful agreement with rival Facebook to maintain control of the marketplace for header bidding. These anticompetitive and deceptive practices demonstrably diminished publishers' ability to monetize content, increased advertisers' costs to advertise, and directly harmed consumers.

Google sought dismissal of the entire case, arguing that its conduct was lawful and that its success was merely a "product of innovation," among other forced justifications. But on September 13, 2022—after Keller Postman Partner Ashley Keller delivered a momentous oral argument—the Court largely rejected those arguments, allowing the States' claims of monopolization, attempted monopolization, and tying to proceed to discovery. We are proud of this result, and eager and ready to push these claims forward on behalf of the States to discover and expose the full magnitude of Google's wrongdoing and restore free competition to the multibillion-dollar ad display marketplace.

## STATE OF TEXAS V. META PLATFORMS INC.

**Leadership Role**: Partner Zina Bash is Lead Counsel for the State of Texas

Keller Postman represents the State of Texas in a lawsuit against Facebook parent Meta Platforms Inc. for its decade-long use of facial-recognition technology to exploit Texans' biometric information in violation of Texas law. The suit—*State of Texas v. Meta Platforms LLC, f/k/a Facebook, Inc.*—alleges that the social media giant, formerly known as Facebook, unlawfully captured Texans' biometric identifiers for a commercial purpose without informed consent, disclosed those identifiers to others, and failed to destroy them within a reasonable time—all in violation of the Texas Capture or Use of Biometric Identifier Act ("CUBI"). The State also alleges that Facebook engaged in false, misleading, and deceptive acts and practices in violation of the Texas Deceptive Trade Practices-Consumer Protection Act. The suit seeks civil penalties in the hundreds of billions of dollars.

According to the complaint, for more than a decade, Facebook built an artificial-intelligence empire on the backs of Texans by deceiving them while capturing their most intimate data, thereby putting their well-being, safety, and security at risk. Filed in the state district court in Marshall, TX, the suit seeks civil penalties in the hundreds of billions of dollars.

Attorney General Ken Paxton emphasized the significance of this matter in his statement: "Facebook has been secretly harvesting Texans' most personal information—photos and videos— for its own corporate profit... Texas law has prohibited such harvesting without informed consent for over 20 years. While ordinary Texans have been using Facebook to innocently share photos of loved ones with friends and family, we now know that Facebook has been brazenly ignoring Texas law for the last decade."

Keller | Postman

# Case Highlights Continued:

## TOPDEVS, LLC ET AL V. LINKEDIN CORPORATION

Keller Postman filed a class action against LinkedIn—*TopDevs, LLC et al v. LinkedIn Corporation*—on behalf of users of LinkedIn's advertising platform. LinkedIn admitted in August 2019 that it had inflated video view and ad impression metrics for more than 418,000 advertisers, who overpaid for their campaigns as a result. The suit alleges that LinkedIn was aware of these metric errors and, in fact, reports rampant non-genuine metrics that inflate the prices for all types of advertising across the LinkedIn platform. Specifically, the suit alleges that, despite aggressively marketing its platform as a premium product that allows marketers to advertise to highly engaged audiences of working professionals, LinkedIn's platform is plagued by automated, fraudulent, mistaken, and miscalculated engagement with LinkedIn ads, which inflates the prices for all types of advertising on the LinkedIn platform.

This lawsuit is intended to not only stop LinkedIn's allegedly unfair and fraudulent business practices but also increase transparency into whether LinkedIn's advertising metrics truly reflect user engagement with paid advertisements. The matter therefore raises important issues regarding overall transparency in online marketing.

## FISHON ET AL V. PELOTON INTERACTIVE, INC.

To secure beneficial network effects in a nascent and growing industry of home-based studio classes, Peloton promised consumers an "ever-growing" library. But Peloton was forced to remove the majority of its content in March 2019 following a copyright infringement lawsuit by members of the National Music Publishers Association. Keller Postman filed approximately 2,700 individual arbitrations on behalf of customers who were promised an "ever-growing" class library. Several arbitrations moved forward, and decisions were issued in favor of the plaintiffs. In response, Peloton refused to abide by the terms of its own arbitration clause and ignored the American Arbitration Association's requirement that it pay filing fees for demands seeking less than $10,000.

AAA barred Peloton from using its arbitral forum and announced that "either party may choose to submit its dispute to the appropriate court for resolution." Keller Postman, in partnership with attorneys from DiCello Levitt Gutzler, filed a class-action lawsuit in the U.S. District Court for the Southern District of New York, *Fishon et al v. Peloton Interactive, Inc.*

Judge Lewis Liman denied Peloton's motion to dismiss the case. This matter is important, because Peloton affirmatively chose to disregard its own arbitration agreement and opted instead for the class action. That move reflects the company's true intention behind the arbitration clause within its Terms of Service: not as an effective method for customers to pursue claims, but as an escape route from liability. Keller Postman's ability to push forward arbitrations on a mass scale led to Peloton's decision to voluntarily submit itself to class action litigation. And now the firm can pursue consumer-protection remedies on behalf of all affected Peloton subscribers.

Keller | Postman

## Case Highlights Continued:

### MITCH OBERSTEIN ET AL V. LIVE NATION ENTERTAINMENT, INC. ET AL & SKOT HECKMAN ET AL V. LIVE NATION ENTERTAINMENT INC. ET AL

Quinn Emanuel Urquhart & Sullivan filed a class-action lawsuit, *Mitch Oberstein et al v. Live Nation Entertainment, Inc. et al* (formerly *Olivia Van Iderstine et al v. Live Nation Entertainment, Inc. et al*). Ticketmaster customers allege that Ticketmaster and Live Nation used their dominance to inflate ticket prices. After Ticketmaster moved to force consumers to individually arbitrate their disputes, Keller Postman joined as co-counsel with Quinn Emanuel. Later, the district court granted Ticketmaster's motion to compel arbitration, and the order compelling arbitration is on appeal to the Ninth Circuit.

Ticketmaster next published a new arbitration clause for consumers in its terms and conditions that designated a new dispute resolution forum called New Era ADR. Keller Postman filed a new class action against Ticketmaster in January 2022—*Skot Heckman et al. v. Live Nation Entertainment Inc. et al.*—on behalf of individuals subject to the new arbitration agreement. Ticketmaster moved to compel arbitration under the new arbitration agreement. We believe the new arbitration agreement is unconscionable and unfair to consumers. The court has granted our motion for discovery into whether an enforceable arbitration agreement exists, and we will work to uncover the business dealings that exist between Ticketmaster and New Era ADR to prove that this forum is unfair to consumers. Regardless of Ticketmaster's evasive tactics, we will rely on our firm's legal and operational innovation to see that corporations can't change the rules to avoid liability.

### BIPA LITIGATION OVERVIEW

Keller Postman represents thousands of clients in the state of Illinois who assert violations of the Illinois Biometric Information Privacy Act (BIPA). Our clients' biometric information has been wrongfully captured without consent by employers and technology platforms. We have been litigating cases against numerous entities, including against MOD Pizza, Vonachen Service, Inc., Heartland Beef, Inc., Wireless Vision LLC, and Sydell Hostel Manager LLC, d/b/a Freehand Chicago.

BIPA is one of the country's most stringent biometric privacy laws, prohibiting private companies from capturing, obtaining, storing, transferring, and/or using the biometric identifiers and/or information (such as fingerprints) of another individual for any purpose without first providing such individual with certain written disclosures and obtaining written consent. BIPA requires anyone who records biometric information to get informed consent before doing so and to create a publicly available retention policy so people can be assured that their sensitive biometric data won't be disclosed without their knowledge.

Although BIPA has existed for more than a decade, companies are still capturing biometric information (which can easily be used to perpetrate identity fraud in the wrong hands) in Illinois without explaining the implications of that capture to their employees and customers. While corporations often loosely interpret new laws, Keller Postman is actively influencing the enforceability of these laws, setting a clear path forward for those seeking reprieve from improper collection and storage of private information.

**Results**:
- *Soper v. Sydell Hostel Manager LLC*: Secured $250,000 settlement for class of ~300
- *Pratz v. MOD Super Fast Pizza, LLC*: Secured $1.3 million settlement for class of ~1,134
- *Corey v. Wireless Vision, LLC.*: Secured $279,000 settlement for class of ~300



# Case Highlights Continued:

## DATA BREACH LITIGATION OVERVIEW

Keller Postman is leading numerous class actions on behalf of hundreds of thousands of individuals whose sensitive personal information—including social security numbers, health/medical records, and financial information—has been stolen. The lawsuits accuse defendants of negligently handling consumers' personal data and private information. Defendants failed to take appropriate precautions to protect this data, did not appropriately and speedily resolve data breach occurrences, and also failed to adequately recompense the plaintiffs.

**These class actions include**:
- *William Biscan v. Shields Health Care Group Inc.* (Named Interim Co-Lead Class Counsel)
- *Gilbert v. AFTRA Retirement Fund et al.*
- *Greco v. Syracuse ASC, LLC d/b/a Specialty Surgery Center of Central New York*
- *Harrington v. Elekta, Inc.*
- *Miller v. Syracuse University*
- *Valencia v. North Broward Hospital District d/b/a Broward*
- *Esposito et al v. Refuah Health Center, Inc.*
- *Garner v. Missouri Delta Medical Center*
- *Abbott et al v. Taylor County Hospital District Health Facilities Corporation d/b/a Taylor Regional Hospital*
- *Cain et al v. Lavaca Medical Center; Crawford v. Ascension Michigan*
- *Crawford v. Ascension Michigan*
- *Shepherd v. Cancer and Hematology Centers of Western Michigan, P.C.*

**Results**:
- *Hestrup et al. v. DuPage Medical Group. Ltd. d/b/a DuPage Medical Group*: Secured $3 million settlement; Partner Seth Meyer was named Interim Class Counsel
- *Alexander, et al. v. Otis R. Bowen Center for Human Services, Inc.:* Received preliminary approval for $1.55 million settlement
- *Hall, et al. v. AspenPointe, Inc., et al.:* Secured $1.3 million settlement

## ZANTAC (RANITIDINE) MULTIDISTRICT LITIGATION

**Leadership Role**: Partner Ashley Keller chairs the Law & Briefing Committee and is a member of the Plaintiffs' Executive Committee

In late 2019, public watchdogs discovered that ranitidine (branded as "Zantac") degrades into the cancer-causing compound NDMA. The FDA pulled it from the market. The Zantac MDL coordinates suits accusing Pfizer Inc., Sanofi SA, Boehringer Ingelheim Pharmaceuticals Inc., and GlaxoSmithKline LLC—as well as generic makers, distributors, pharmacies, and others in the supply chain—of causing thousands of plaintiffs to develop cancer. The importance of this matter lies in the severity of the plaintiffs' claims and the number of injured plaintiffs given the widespread use of these drugs before they were pulled from the shelves.

The Keller Postman team has briefed and argued four rounds of motions to dismiss; amended the master complaints; litigated three appeals through oral argument; briefed and argued key discovery fights; and briefed and argued *Daubert* motions on general causation. We have also worked up bellwethers for trial, collecting their medical records, responding to discovery, and so forth.

# Case Highlights Continued:

## ZANTAC STATE COURT LITIGATION

In the Zantac MDL, plaintiffs' leadership has made a conservative choice to only pursue claims for plaintiffs who suffer from at least one of five designated cancers allegedly caused by Zantac consumption (including bladder, gastric, esophageal, liver, and pancreatic cancer). But Keller Postman is leading the charge on aggressive litigation in state court, largely for plaintiffs who suffer from non-designated cancers—and have no other avenue to pursue their claims. We also represent a number of clients with designated cancers in state court. Our firm has filed claims in California, Delaware, Illinois, and Pennsylvania. No other plaintiffs' firm involved in state-side Zantac litigation has attempted to take on such a large number of claimants in this many jurisdictions.

During a hearing on August 9, 2022 in the Illinois case *Bayer v. Boehringer Ingelheim Pharm.*, Keller Postman received a favorable *Frye* decision when the court denied defendants' motions to exclude Keller Postman's expert on general causation for esophageal and kidney cancer. This is the first ruling in the country on causation and is especially important in vindicating our firm's decision to bring kidney cancer cases, a non-designated cancer.

## 3M COMBAT ARMS EARPLUGS MULTIDISTRICT LITIGATION

**Leadership Role**: Partner Nicole Berg sits on the Law & Briefing Subcommittee; Partner Ashley Keller is Counsel of Record on the first two appeals

The 3M Combat Arms Earplugs MDL involves claims by military servicemembers against 3M for hearing loss and tinnitus caused by faulty earplugs. Roughly 270,000 servicemembers have lodged claims against 3M related to the earplugs, making this the largest MDL in history.

The court appointed Keller Postman Partner Nicole Berg to the plaintiffs' leadership team as a member of the Law & Briefing Subcommittee. Berg and her team represented one of the 25 bellwether plaintiffs at trial and have played an integral role in drafting responses to MDL-wide dispositive motions and in briefing key legal issues in many bellwether trials. Keller Postman is counsel of record on 3M's appeals of bellwether verdicts. With the bellwether trials complete, the Court ordered four "waves" of 500 cases each to proceed to trial. Keller Postman is currently preparing wave cases for trial.

In July 2022, several "Aearo" subsidiaries—but not 3M itself—filed for bankruptcy, seeking an injunction in favor of 3M to halt litigation in the MDL entirely. Keller Postman responded creatively and aggressively. Specifically, we won a preliminary injunction under the All Writs Act from the MDL Court preventing 3M from trying to relitigate long-settled MDL rulings in bankruptcy. We participated in the bankruptcy court, presenting an expert witness who testified that 3M was facing $100 billion in liability, arguing that if 3M obtained an injunction to halt MDL litigation, it should also be enjoined from issuing dividends and share buybacks. The bankruptcy court fully denied 3M's injunction request.

In August 2022, Keller Postman filed a bombshell fraudulent transfer complaint against 3M, asking the MDL Court to stop 3M from dissipating its assets by spinning off its healthcare business, paying dividends, and buying back stock (all violations of the Florida Uniform Fraudulent Transfer Act).

Most recently, Judge Rodgers issued a 22-page order in which she granted plaintiffs' motion for summary judgment on 3M's "full and independent liability" for earplug claims, issuing an unprecedented sanction and formally nullifying 3M's bankruptcy scheme.

# Case Highlights Continued:

## ACETAMINOPHEN —ASD-ADHD MULTIDISTRICT LITIGATION

**Leadership Role**: Partner Ashley Keller is Co-Lead Counsel and a member of the Plaintiffs' Executive Committee along with Partner Ashley Barriere, who leads the Law and Briefing Subcommittee.

Studies over the last decade have shown that consuming acetaminophen while pregnant increases a child's risk for autism spectrum disorder (ASD), attention deficit hyperactivity disorder (ADHD), and other developmental disorders related to infant exposure during pregnancy. Parents on behalf of their injured children are bringing claims against makers of generic store brand acetaminophen for failing in their duty to adequately warn of the hazards of prenatal exposure to acetaminophen.

According to the complaints, acetaminophen has long been marketed as the safest, and the only appropriate, over-the-counter pain relief drug on the market for pregnant women. However, increasing experimental and epidemiological research shows that prenatal exposure to acetaminophen alters fetal development, which significantly increases the risks of neurodevelopmental disorders. For example, in a study at Johns Hopkins School of Public Health, the risk of autism was three times higher for children whose mothers took the most Acetaminophen. Since 2013, there have been six European birth cohort studies examining over 70,000 mother-child pairs, showing the association between prenatal use of acetaminophen and ASD. And numerous studies over the last decade have shown that long-term maternal use of acetaminophen during pregnancy is substantially associated with ADHD.

Given the strong science, Keller Postman has filed claims in Nevada, California, and Washington, with far more claims to be filed in the following weeks and months. This matter is significant, because more than 65% of women in the United States use acetaminophen during pregnancy and have been reassured repeatedly of its safety (despite the widespread, long-term scientific evidence showing the high risk of developmental disorders because of consuming when pregnant). We anticipate that this will be one of the largest multidistrict litigations in the history of the United States.

Keller Postman has been at the forefront of this fast-growing mass tort since our team first uncovered the Consensus Statement in *Nature* highlighting the increasing evidence linking prenatal acetaminophen exposure to autism and ADHD. Our team also recently defeated Walmart's motion to dismiss on preemption grounds, overcoming the single largest barrier to plaintiffs' ultimate recovery.

## NECROTIZING ENTEROCOLITIS/INFANT-FORMULA LITIGATION

Keller Postman is leading the state-side litigation against Abbot and Mead—the makers of Enfamil and Similac infant formula and fortifiers—for their role in causing preterm infants to develop necrotizing enterocolitis (NEC), a dangerous inflammation of the intestines that can lead to rupture and death. The lawsuits allege that defendants (including Mead Johnson & Company LLC, Mead Johnson Nutrition Company, and Abbot Laboratories) falsely marketed their infant formulas as "medically endorsed" and "nutritionally equivalent" to mother's breast milk when the formulas are linked to the development of necrotizing enterocolitis.

We are bringing claims on behalf of families in state courts across the country, with cases filed in Illinois (Madison County, Cook County, and St. Clair County), as well as in state courts in California, Pennsylvania, and Missouri. This underscores the vast scope of the harm that the defendants have inflicted on these most vulnerable victims throughout the United States.



# Case Highlights Continued:

This matter is significant, namely due to the obvious vulnerability of the young victims and the severity of NEC and its long-term effects. Despite mounting legal claims against the companies based on scientific evidence and research that has existed for decades, as well as safer alternatives like donor milk and human-milk based formula, these defendants continue to sell these products and encourage them to be distributed to premature infants across the country. Through this litigation and other advocacy efforts, we hope to shed more light on the dangers of these products and to equip other parents with the information they need to avoid putting their infants' health at risk.

## CAMP LEJEUNE WATER CONTAMINATION LITIGATION

**Leadership Role**: Partner Zina Bash appointed Co-Lead Counsel and Government Liaison

Keller Postman represents thousands of veterans, military family members, and other civilians who were poisoned by the water at U.S. Marine Corps Base Camp Lejeune. As a result of consuming, bathing in, cooking with, and swimming in this contaminated water, our clients allege that they have developed diseases and chronic conditions, including cancers of the bladder, kidney, and liver, non-Hodgkin's lymphoma, Parkinson's disease, and multiple myeloma – among many other ailments.

Keller Postman also played a significant role in lobbying for the passage of The Camp Lejeune Justice Act, which was signed into law by the President on August 10, 2022. Keller Postman Partner Zina Bash played a particularly meaningful role in advancing the Justice Act. Having previously worked at the highest levels of the government, Bash leveraged her connections in Washington to help the bill make its way through Congress. And within minutes of the bill-signing, Keller Postman began filing actions against the U.S. government under the Camp Lejeune Justice Act.

This matter is significant, because over one million individuals were exposed to the toxic water at Camp Lejeune over a 30-year period, from the 1950s to the 1980s. Though the government became aware of the contamination in the early 1980s, it took years to remedy it and decades to warn individuals who had been exposed. Camp Lejeune's poisonous water has also been linked to widespread birth defects and high rates of stillborn babies. In fact, there were so many stillborn babies in Camp Lejeune during that time that a cemetery near the base became known as "Baby Heaven." What happened at Camp Lejeune is a terrible tragedy that could have been prevented. The Camp Lejeune Justice Act has been a long time coming, and it is our privilege to fight for justice on behalf of our clients.

Keller Postman has played a leading role in advocating for the passage of the Camp Lejeune Justice Act. After the Act became law, our firm helped clients sign up for claims under the Act and file them with the Navy and in Court. In fact, within minutes of the bill-signing, we filed the first actions against the government under the Justice Act to obtain compensation for victims.

## PARAGARD IUD MULTIDISTRICT LITIGATION

**Leadership Role**: Partner Nicole Berg sits on the Plaintiffs' Executive Committee

The Paragard IUD MDL coordinates suits accusing Teva Pharmaceuticals USA, Inc., Teva Women's Health, Inc., The Cooper Companies Inc., and CooperSurgical Inc. of failing to warn users of the risks posed by the Paragard copper intrauterine device (IUD). The plaintiffs allege that their Paragard IUDs broke apart, leaving behind pieces of the device, which sometimes embedded in their uterus. The breakage

# Case Highlights Continued:

caused serious complications and injuries, including surgeries to remove the broken pieces of the device, infertility, and pain.

In September 2021, Partner Nicole Berg argued against defendants' motion to dismiss the claims of plaintiffs in this MDL. Two months later, Judge Leigh Martin May sided with plaintiffs and denied defendants' motion on preemption, shotgun pleading, Rule 12, and Rule 9(b), finding that "factual underpinnings for the design defect claims and detailed allegations about the defendants' failure to warn" were sufficient to state a claim. The discovery process has begun.

## ONGLYZA AND KOMBIGLYZE XR MULTIDISTRICT LITIGATION

**Leadership Role**: Partner Ashley Barriere appointed to the Plaintiffs' Steering Committee and leads the Law & Briefing Committee

This MDL involves individuals who took Onglyza (saxagliptin) and Kombiglyze XR (saxagliptin and metformin) to treat Type 2 diabetes. The plaintiffs represented by Keller Postman allege that the drugs caused serious cardiac complications. Defendants Bristol-Myers Squibb and AstraZeneca began selling the drugs in 2009 and 2010, before completing a cardiac risk study recommended by the U.S. Food and Drug Administration. The study was completed in 2013 and showed that saxagliptin users had a significantly increased risk of hospitalization due to heart failure.

We're proud of Partner Ashley Barriere's position on plaintiffs' leadership in this MDL. Our firm values empowering both young attorneys and female leaders to take on pivotal roles.

## IN RE JOHNSON & JOHNSON AEROSOL SUNSCREEN MARKETING, SALES PRACTICES & PRODUCTS LIABILITY LITIGATION

**Leadership Role**: Keller Postman named Interim Class Counsel

Keller Postman filed a class action against Johnson & Johnson subsidiary Johnson & Johnson Consumer, Inc. (J&J)—*Dominguez et al v. Johnson & Johnson Consumer*—on behalf of purchasers of certain Aveeno and Neutrogena sunscreens that have dangerous and unacceptable levels of the known cancer-causing chemical, benzene. Benzene, which is often found in crude oil and identified by the smell associated with gasoline, is classified as a human carcinogen by the United States Department of Health and Human Services, and a Group 1 compound (i.e. "carcinogenic to humans") by the World Health Organization and the International Agency for Research on Cancer.

In October 2021, the Judicial Panel on Multidistrict Litigation approved centralizing in Florida the federal court lawsuits accusing Johnson & Johnson of selling sunscreen products tainted with benzene. The consolidated litigation is *In re Johnson & Johnson Aerosol Sunscreen Marketing, Sales Practices & Products Liability Litigation*.

# Attorney Biographies



# Alex Dravillas
*Associate*

Alex has litigated cases as a member of both the plaintiffs' and defense bars, maintaining a focus on complex civil litigation throughout his career.

At Keller Postman, Alex represents public and private entities across the nation in trial and appellate litigation. His practice focuses on governmental, consumer-protection, and data-privacy issues.

Alex helps manage and lead litigation across pivotal privacy-related matters at Keller Postman. He drives Keller Postman's data breach claims, drafting complaints, managing mediations, and handling negotiation with opposing counsel. He represents clients throughout Illinois who assert violations of the Illinois Biometric Information Privacy Act (BIPA). Our clients' biometric information was wrongfully captured without their consent by employers and technology platforms alike. Alex manages the ongoing litigation in cases against numerous entities.

Alex also focuses on a broad range of consumer protection matters (including claims for false advertising), supports the firm's representation of state and local government entities in connection with the opioid crisis, and represents the State of Texas in its case against Meta Platforms, Inc. for its capture of biometric identifiers in violation of Texas law.

Alex is listed as a 2022 Illinois Super Lawyers Rising Star, recognized for his outstanding professional achievement.

Alex is a graduate of the University of Chicago Law School. He earned his undergraduate degrees in political science, economics, finance, and psychology *summa cum laude* from Loyola University Chicago.

## EDUCATION

J.D., University of Chicago Law School

B.S., Loyola University Chicago

B.A., Loyola University Chicago

## AWARDS

Super Lawyers Illinois Rising Stars (2022, 2023)

## CONTACT

ajd@kellerpostman.com

312.948.8474

Keller | Postman