## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| **TREVOR MILLER,** individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>**SYRACUSE UNIVERSITY,**<br><br>    Defendant. | Case No. 5:21-cv-1073-LEK-TWD<br><br><br>Class Action |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED
## <u>MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>

# <u>TABLE OF CONTENTS</u>

Table Of Authorities ...................................................................................................................iii

I.     Introduction ......................................................................................................................1

II.    Background .......................................................................................................................2

III.   The Settlement Terms .......................................................................................................4

    A.     The Class ...............................................................................................................4

    B.     Compensation To The Class..................................................................................5

        1.     Monetary Compensation To Class Members...........................................5

        2.     Improved Data Security Systems ............................................................6

    C.     Notice And Settlement Administration...................................................................6

    D.     Opt-Outs And Objections To The Settlement ........................................................7

    E.     Attorneys' Fees And Expenses And Service Award .............................................7

    F.     Release ...................................................................................................................8

IV.    Standards For Approval Of A Class Action Settlement....................................................8

V.     The Court Should Grant Final Certification Of The Settlement Class...............................11

VI.    The Settlement Is Fair, Reasonable,
    And Adequate, And Should Be Finally Approved. ..........................................................11

    A.     The Settlement Is Substantively Fair. ..................................................................11

        1.     This Action Is Complex And Will Be Expensive And Lengthy To Litigate.....11

        2.     The Class Reaction Is Overwhelmingly Positive. ..................................13

        3.     The Current State Of Litigation And The
            Amount Of Discovery Completed Favor Final Approval. .................................14

        4.     Plaintiff Would Face Substantial Hurdles Risks If The Case Proceeded...........15

        5.     Maintaining The Class Action Through Trial May Be Challenging...................16

        6.     Defendant's Ability To Withstand A Greater
            Judgment Does Not Per Se Make The Settlement Unfair. .................................17

7.    The Settlement Benefits Are Reasonable Considering
The Possible Recovery And Attendant Litigation Risks. ....................................17

B.    The Settlement Is Procedurally Fair. ........................................................................18

1.    Plaintiff And His Counsel Have Adequately Represented The Class. ..............19

2.    The Proposal Was Negotiated At Arm's Length......................................................19

3.    The Allocation Plan Is Fair And Adequate,
And Class Members Are Treated Equitably...........................................................20

4.    Notice Was Provided In The Best Practicable Manner.......................................21

5.    The Proposed Attorneys' Fees And
Expenses And Service Awards Are Fair And Adequate......................................22

6.    The Parties Have No Additional Agreements. .......................................................22

C.    Proposed Class Counsel Should Be Provisionally Appointed As Class Counsel........23

Conclusion  23

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                  <u>Page(s)</u>

*Broockmann v. Bank of Greene Cnty.,*
    No. 22-390, 2023 U.S. Dist. LEXIS 191241 (N.D.N.Y. Oct. 25, 2023) ..................................... 8, 9

*Carrasco v. Endurance U.S. Holdings Corp.,*
    No. 17-7319, 2020 U.S. Dist. LEXIS 46905 (S.D.N.Y. Mar. 17, 2020) .......................................... 9

*Charron v. Pinnacle Grp. N.Y. LLC,*
    874 F. Supp. 2d 179 (S.D.N.Y. 2012) ......................................................................... 13, 16

*City of Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974) .................................................................................... 10, 17

*County of Suffolk v. Long Island Lighting Co.,*
    907 F.2d 1295 (2d Cir. 1990) ......................................................................................... 13

*Dornberger v. Metro. Life Ins. Co.,*
    203 F.R.D. 118 (S.D.N.Y. 2001) .................................................................................... 22

*D'Amato v. Deutsche Bank,*
    236 F.3d 78 (2d Cir. 2001) ..................................................................................... 12, 18

*D'Angelo v. Hunter Bus. Sch., Inc.,*
    No. 21-3334, 2023 U.S. Dist. LEXIS 131029 (E.D.N.Y. July 28, 2023) ................................. 12, 20

*Edwards v. Mid-Hudson Valley Fed. Credit Union,*
    No. 22-00562, 2023 U.S. Dist. LEXIS 158085 (N.D.N.Y. Sep. 7, 2023) ..................................... 8, 9

*Feder v. Elec. Data, Sys. Corp.,*
    429 F.3d 125 (5th Cir. 2005) ......................................................................................... 23

*Fero v. Excellus Health Plan, Inc.,*
    502 F. Supp. 3d 724 (W.D.N.Y. 2020) ............................................................................. 9

*Gilliam v. Addicts Rehab. Ctr. Fund,*
    No. 5-3452. 2008 U.S. Dist. LEXIS 23016 (S.D.N.Y. Mar. 24, 2008) ...................................... 18

*Hamilton v. SunTrust Mortg. Inc.,*
    No. 13-60749, 2014 U.S. Dist. LEXIS 154762 (S.D. Fla. Oct. 24, 2014) ................................... 14

*Hesse v. Godiva Chocolatier,*
    No. 19-972, 2022 U.S. Dist. LEXIS 72641 (S.D.N.Y. Apr. 20, 2022) ....................................... 14

*In re Am. Int'l Grp., Inc. Sec. Litig.*
689 F.3d 229 (2d Cir. 2012) ................................................................. 8

*In re Austrian & German Bank Holocaust Litig.,*
80 F. Supp. 2d 164 (S.D.N.Y. 2000) ............................... 12, 14, 15, 17

*In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.,*
909 F. Supp. 2d 259 (S.D.N.Y. 2012) ................................. 15, 16, 17

*In re Capital One Consumer Data Sec. Breach Litig.,*
No. 19-2915, 2022 U.S. Dist. LEXIS 234943 (E.D. Va. Sep. 13, 2022) ........................... 9

*In re EVCI Career Colleges Holding Corp. Sec. Litig.,*
No. 5-10240, 2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007) ........................... 10

*In re Global Crossing Sec. & ERISA Litig.,*
225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................ 13

*In re Heartland Payment Sys.,*
851 F. Supp. 2d 1040 (S.D. Tex. 2012) ............................................. 18

*In re Linkedin User Privacy Litig.,*
309 F.R.D. 573 (N.D. Cal. 2015) ...................................................... 18

*In re Luxottica Grp. S.p.A. Sec. Litig.,*
233 F.R.D. 306 (E.D.N.Y. 2006) ......................................................... 8

*In re Marsh ERISA Litig.,*
265 F.R.D. 128 (S.D.N.Y. 2010) ........................................................ 11

*In re Michael Milken & Assocs. Securities Litig.,*
150 F.R.D. 57 (S.D.N.Y. 1993) .......................................................... 17

*In re Nasdaq Market–Makers Antitrust Litig.,*
176 F.R.D. 99 (S.D.N.Y. 1997) ..................................................... 19, 20

*In re PaineWebber Ltd. Partnerships Litig.,*
171 F.R.D. 104 (S.D.N.Y. 1997) ....................................................... 15

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,*
330 F.R.D. 11 (E.D.N.Y. 2019) ........................................................ 10

*In re Solara Med. Supplies Data Breach Litig.,*
No. 19-2284, 2022 U.S. Dist. LEXIS 72834 (S.D. Cal. Apr. 20, 2022) ........................... 9

*In re Sonic Corp. Customer Data Breach Litig.,*
    No. 17-02807, 2020 U.S. Dist. LEXIS 204169 (N.D. Ohio Nov. 2, 2020) ...................................... 9

*In re WorldCom, Inc. Sec. Litig.,*
    388 F.Supp.2d 319 (S.D.N.Y. 2005) ................................................................... 20

*Ingles v. Toro,*
    438 F. Supp. 2d 203 (S.D.N.Y. 2006) ................................................................ 11

*James v. China Grill Mgmt.,*
    No. 18-455, 2019 U.S. Dist. LEXIS 72759 (S.D.N.Y. Apr. 30, 2019) ........................................... 22

*Maley v. Del Glob. Techs. Corp.,*
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................................................ 13

*Manley v. Midan Rest. Inc.,*
    No. 14-1693, 2017 U.S. Dist. LEXIS 44560 (S.D.N.Y. Mar. 27, 2017) ........................................ 17

*Moses v. N.Y. Times Co.,*
    79 F.4th 235 (2d Cir. 2023) .......................................................................... 22

*Newman v. Stein,*
    464 F.2d 689 (2d Cir. 1972) .......................................................................... 15

*Odom v. Hazen Transp., Inc.,*
    275 F.R.D. 400 (W.D.N.Y. 2011) ..................................................................... 15

*Perez v. Asurion Corp.,*
    501 F. Supp. 2d 1360 (S.D. Fla. 2007) .............................................................. 14

*Pickard v. Onsite Facility Servs., LLC,*
    No. 22-207, 2023 U.S. Dist. LEXIS 191242 (N.D.N.Y. Oct. 25, 2023) ........................................ 20

*Seaman v. Nat'l Collegiate Student Loan,*
    No. 18-1781, 2023 U.S. Dist. LEXIS 43041 (S.D.N.Y. Mar. 13, 2023) ........................................ 9

*Spann v. AOL Time Warner, Inc.,*
    No. 02-8238, 2005 WL 1330937 (S.D.N .Y. June 7, 2005) ................................................... 8

*Story v. SEFCU,*
    No. 18-764, 2021 U.S. Dist. LEXIS 34909 (N.D.N.Y. Feb. 25, 2021) ................................... 13, 20

*TBK Partners, Ltd. v. W. Union Corp.,*
    675 F.2d 456 (2d Cir. 1982) .......................................................................... 13

*TBK Partners, Ltd. v. Western Union Corp.*,
    517 F. Supp. 380 (S.D.N.Y. 1981) ................................................... 12

*Torres v. Gristede's Operating Corp.*,
    No. 04-3316, 2010 U.S. Dist. LEXIS 139144 (S.D.N.Y. Dec. 21, 2010) ...................................... 14

*Wal–Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) ................................................... 8, 10, 17, 19

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982) ................................................... 8, 12

*Wright v. Stern*,
    553 F. Supp. 2d 337 (S.D.N.Y. 2008) ................................................... 13

## **Statutes**

Federal Rule of Civil Procedure 23 ................................................... *passim*

Federal Practice and Procedure: Civil § 1797.1 ................................................... 11

GBL § 349 ................................................... 3

GBL § 899-AA ................................................... 2

## **Other**

Manual for Complex Litigation (Third) § 30.42 (1995) ................................................... 10

## I.    __INTRODUCTION__

On December 21, 2023, this Court granted preliminary approval of the proposed settlement agreement resolving the claims of Plaintiff Trevor Miller ("Plaintiff") arising from a "phishing" e-mail event affecting Defendant Syracuse University's ("Defendant" or "SU", collectively with Plaintiff, the "Settling Parties"), whereby unauthorized user(s) gained access to an employee of Defendant's e-mail account between September 24 and September 28, 2020, and that email contained personal information (the "Data Incident"), and preliminarily certified a settlement class of approximately 9,800 individuals impacted by the Data Incident (collectively, the "Class," "Settlement Class," or "Class Members"). *See* Order, ECF No. 54 ("Prelim. Approval Order"). Since the Court's grant of preliminary approval, notice was successfully disseminated to the Settlement Class in accordance with the Court's order. *See* Declaration of Settlement Administrator, P&N ("P&N Decl.") §§ IV-V. Reaction from the Class has been overwhelmingly positive, including zero objections and only a single exclusion request out of a Class of approximately 9,800 individuals. *Id.* ¶¶ 17-18. Accordingly, Plaintiff now moves for final approval of the settlement; Defendant does not oppose this request. The preliminarily approved settlement, as set forth in the executed Settlement Agreement (previously submitted to the Court as Exhibit A to the Declaration of Todd S. Garber in Support of Preliminary Approval, ECF No. 53-3) (the "Settlement Agreement", the "Settlement" or "SA"), resolves Plaintiff's claims on a class-wide basis, is fair, reasonable, and adequate, has been well-received by the Class, and satisfies all the criteria for final settlement approval and certification of a settlement class under New York and federal law. Plaintiff respectfully submits this memorandum in support of his motion for final approval of the Settlement to resolve this case pursuant to Federal Rule of Civil Procedure 23 ("Rule 23").

With this motion, Plaintiff respectfully requests that the Court (1) grant final approval of the Settlement Agreement; (2) appoint Plaintiff Trevor Miller as Class Representative; (3) finally certify

the proposed Settlement Class under Rule 23 and appoint Todd S. Garber and Andrew C. White of Finkelstein, Blankinship, Frei-Pearson & Garber, LLP ("FBFG") and Alex Dravillas of Keller Postman, LLC ("KP") as Class Counsel; (5) approve payment of the requested Service Award of $5,000.00 for Plaintiff Trevor Miller; (6) approve payment of the requested attorneys' fees of $295,000.00 to Plaintiff's Counsel; (7) approve payment to settlement and claims administrator Postlethwaite & Netterville, APAC ("P&N") or the "Settlement Administrator") for its work in this litigation; (8) authorize release of the claims of any Class Member who did not opt-out of the Class, pursuant to the terms of the Settlement Agreement; and (9) enter Final Judgment dismissing this action with prejudice.

## II.     **BACKGROUND**

This case arises out of the Data Incident at Syracuse, which allegedly exposed Plaintiff's and Class Members' sensitive, personal information.  Class Action Complaint, ECF No. 2 ("Compl.") ¶ 2. Plaintiff alleges that Defendant had insufficient cybersecurity measures in place to safeguard the Sensitive Information that Plaintiff and Class Members provided to Defendant.  *Id.* ¶ 3.  As a result, cybercriminals were able to gain access to – or "hack" – at least one of Defendant's employee's email accounts between approximately September 24, 2020 and September 28, 2020, following a successful "phishing" attempt that Defendant's employees failed to identify or adequately safeguard against, thereby gaining access to an employee e-mail account which contained potentially Sensitive Information of approximately 9,800 Class Members, including Plaintiff.  *Id.*  Defendant subsequently provided notice of the Data Incident to all individuals whose information may have been involved. *Id.* ¶ 28-29.

On September 2, 2021, Plaintiff, individually and on behalf of a putative class of all others similarly situated, filed this action, alleging claims arising from the Data Incident: (1) negligence in the handling of Plaintiff's Sensitive Information; (2) breach of express contract; (3) breach of implied

contract; (4) violation of New York General Business Law ("GBL") § 899-AA; and (5) violation of GBL § 349. On September 29, 2021, Defendant removed the Lawsuit to the United States District Court for the Northern District of New York. *See* Notice of Removal. ECF No. 1.

Throughout this litigation, the Parties participated in an informal exchange of documents and settlement negotiations. *See* Order, ECF No. 38. On July 28, 2023, the Parties notified the Court that they had reached a tentative settlement in principle. *See* Status Report, ECF No. 42 ¶ 2.

On July 31, 2023, the Court stayed the above-captioned caption to allow the Parties to continue finalizing the terms of the settlement and drafting the settlement agreement, including negotiating and drafting settlement notices and the claim form and selecting a settlement administrator. *See id.* ¶ 4; Text Order, ECF No. 43. After exchanging considerable discovery and engaging in arms' length negotiations, the Parties were able to finalize and execute the terms of the Settlement following almost three years of litigation. Declaration of Todd S. Garber ("Garber Decl.") ¶ 8.

On December 14, 2023, Plaintiff submitted his unopposed motion for preliminary approval of the Settlement to the Court, providing a copy of the full Settlement Agreement and proposed notices to be sent to Class Members. *See* Motion Preliminary Approval of Class Action Settlement, ECF No. 53. On December 21, 2023, the Court granted preliminary approval of the Settlement, appointing Plaintiff as Class Representative, his attorneys as Class Counsel, and the Settlement Administrator. Prelim. Approval Order ¶¶ 1, 4-5, 7. In doing so, the Court ruled, for settlement purposes, that the pre-requisites to class action treatment under Rule 23(a) and 23(b)(3) – including numerosity, commonality, typicality, predominance, adequacy, and superiority of class treatment of these claims – have been preliminarily satisfied, that the Settlement is "fair, reasonable, adequate," and in the Class's best interests, and that the Settlement was entered into following arms-length

negotiations between the Parties, who were represented by "highly experienced counsel[.]"  *Id.* ¶¶ 1-3.

The Court likewise approved the proposed notices to be sent to Class Members, finding that they satisfy the requirements of due process and Rule 23, "constitute[ing] the best notice practicable under the circumstances[.]"  *Id.* ¶ 6.  As described below, notice was timely distributed to the Class, leading to an overwhelming positive response from Class Members, including only one single exclusion request and zero objections from a class of over 9,800.  P&N Decl. ¶¶ 17-18.

In accordance with the briefing schedule set forth in the Court's Order (*see* Prelim. Approval Order ¶ 10), Plaintiff now moves for final approval of the Settlement, final certification of the Class for settlement purposes, and for an award of attorneys' fees, costs, expenses, and service awards to the named Plaintiff.  Defendant does not oppose these motions.

## III.   THE SETTLEMENT TERMS

Plaintiff has weighed the costs and benefits to be obtained under the Settlement against the costs, risks, and delays associated with the continued prosecution of this time-consuming litigation and the likely appeals of any ruling in favor of either the Class or Defendants.  As a result, Plaintiff believes that the Settlement Agreement provides substantial benefits to the Class, and is fair, reasonable, adequate, and in the best interests of Plaintiff and the Class.  Against this backdrop, and in the interest of avoiding protracted and costly litigation, the Parties have agreed to a proposed settlement described below.

### A.  The Class

The Settlement Class consists of:

All persons who were sent written notification by Syracuse that their Private Information was potentially compromised as a result of the Data Incident discovered by Syracuse in September 2020.  The Settlement Class specifically excludes: (i) Syracuse, the Related Parties, and their officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) any judges assigned to this case and their staff and family; and (iv) any other Person found

by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge.

SA § 1.25.

### B. Compensation To The Class

#### 1. Monetary Compensation To Class Members

The Settlement provides immediate benefits to the Settlement Class, including a cash payment reimbursement for documented Ordinary Losses, documented Extraordinary Losses, and Attested Lost Time spent attributable to the Data Incident. *Id.* § 2.1.

Class Members who submit a Valid Claim using the Claim Form will be eligible for reimbursement of up to $1,000.00 in documented Ordinary Losses (including up to $100.00 in compensation for lost time) and up to $10,000.00 in documented Extraordinary Losses, as defined below and in the Settlement Agreement. *Id.* All such Claim Forms will be reviewed for completeness and plausibility by the Settlement Administrator. *Id.* § 2.4.1.

Each Class Member making a claim for compensation of documented **<u>Ordinary Losses</u>** incurred as a result of the Data Incident will be eligible for compensation of up to a total of $1,000.00 per claimant, upon submission of a Valid Claim using the Claim Form, including documentation supporting their claims, to the Settlement Administrator. *Id.* § 2.1.1(a).[1] Furthermore, Class Members are also entitled to claim payment for up to five hours of Attested Lost Time spent dealing with the Data Incident, at a rate of $20.00 per hour, if at least one (1) full hour was spent dealing with the Data Incident. *Id.* § 2.1.1(b). Attested Lost Time claims need only include a brief description of (1) the action taken in response to the Data Incident (either in checkbox style or written if no checkbox is

---

[1] The Settlement Agreement provides a list of the types of ordinary losses that will qualify for reimbursement, which, generally, includes bank or credit card fees, phone charges, data charges, postage, gasoline for local travel, and fees for credit reports, credit monitoring, or other identity theft insurance products. See SA § IV-2.1.1(a) for additional specifications of qualifying criteria.

applicable); (2) the time associated with each action; and (3) an attestation that the time was spent responding to or addressing issues relating to the Data Incident.[2]  *Id.*

Each Class Member is eligible to receive reimbursement up to $10,000 for documented **Extraordinary Losses** with submission of a Valid Claim using the Claim Form and necessary documentation if the loss: (i) is actual, documented, and unreimbursed, (ii) was more likely than not caused by the Data Incident, (iii) occurred between September 20, 2020 and the Claims Deadline; and (iv)  is not already covered one or more of the ordinary loss compensation categories described above. *Id.* § 2.1.2.  Class Members must also show that they made reasonable efforts to avoid or seek other reimbursement for the extraordinary loss.  *Id.*  Class Members may only submit one claim for Extraordinary Losses.  *Id.*

### 2.  Improved Data Security Systems

The Settlement provides Class Members further benefits in the form of meaningful information security improvements by Defendant.  Considering the Data Incident and Plaintiff's allegations, Defendant agreed to provide sufficient documentation to demonstrate that it either implemented or will implement various security related measures.  *Id.* § 2.3.  As part of the Settlement, Defendant will also separately pay all costs and expenses relating to notice and settlement administration.  *Id.* § 2.5.

### C.  Notice and Settlement Administration

On or about December 21, 2023, the Court appointed P&N as Settlement Administrator to supervise and administer the notice process, as well as to oversee the administration of the Settlement and processing of claims.  *See* Prelim. Approval Order ¶ 7; SA §§ 2.4 (detailing further responsibilities of the Settlement Administrator), 3.2 (detailing the methods of notice).  In accordance with the Court-

---

[2] Time spent claims are included in the $1,000 maximum for documented Ordinary Losses.  SA § 2.1.1(c).

approved Notice Program (*see* Prelim. Approval Order ¶ 6), the Settlement Administrator has provided

notice to the Class in the manner set forth in the Settlement Agreement, and in the Short-Form Notice,

Long-Form Notice, and Claim Form, which are attached to the Settlement Agreement as Exhibits A,

B, and C, respectively. *See* SA at 35-52. The Settlement Administrator has and will continue to

evaluate each Claim Form, including any required documentation submitted, for validity, timeliness,

and completeness through the end of the claims period, pursuant to the standards and procedures set

forth in the Settlement Agreement. *See* P&N Decl. ¶ 16; SA § 2.4.

### D. Opt-Outs And Objections To The Settlement

Pursuant to the terms of the Settlement Agreement, each Class Member had a fair and

reasonable opportunity to opt-out of or submit an objection to the proposed Settlement. *See* SA §§

4-5. The Court previously approved and ordered the proposed procedures and deadlines for filing

exclusion requests and objections. Prelim. Approval Order ¶¶ 8-9.

### E. Attorneys' Fees And Expenses And Service Award

In accordance with the terms of the preliminarily approved Settlement, Class Counsel applies

to the Court for an award of attorneys' fees for $295,000.00 and reasonable litigation costs and

expenses, as well as a Service Award of $5,000 to Plaintiff, as the Class Representative. SA §§ 7.2-7.3.

As set forth in the Settlement Agreement, subject to Court approval, Defendant agreed not to oppose

requests by Plaintiff in these amounts. *Id.* The requested Service Award reflects the diligent and

extensive work Plaintiff has performed in assisting Class Counsel with this litigation, including

gathering information pertaining to the factual allegations of the Complaint and other putative Class

Members' experiences, responding to attorney inquiries, participating in the discovery process, and

representing the Class's interests in reviewing and approving the Settlement Agreement. Garber Decl.

¶¶ 36-37. Payment of such awards shall be separate and apart from any other benefits provided to

Settlement Class Members and the costs of notice and Settlement Administration. SA § 7.1.

### F. Release

In exchange for the relief described above, Class Members who do not opt out of the Class Settlement will fully release Defendant for all claims and causes of action pleaded or that could have been pleaded that are related in any way to the activities stemming from the Data Incident, as explained in detail in the Settlement Agreement § 6.

## IV.    STANDARDS FOR APPROVAL OF A CLASS ACTION SETTLEMENT

Strong judicial policy favors final approval of class action settlements. *See, e.g.*, *Wal–Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("Courts examine procedural and substantive fairness in light of the 'strong judicial policy favoring settlements' of class action suits."); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) ("There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation.") (citing 3 Newberg, Class Actions § 5570c, at 479-80 (1977); *Broockmann v. Bank of Greene Cnty.*, No. 22-390, 2023 U.S. Dist. LEXIS 191241, at *15 (N.D.N.Y. Oct. 25, 2023) (citing *Wal-Mart Stores*); *Spann v. AOL Time Warner, Inc.*, No. 02-8238, 2005 WL 1330937, at *6 (S.D.N .Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions.")).. Indeed, "[c]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation.  There is a strong public interest in quieting any litigation; this is particularly true in class actions." *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006) (citations omitted).

"Before approving a class settlement agreement, a district court must first determine whether the requirements for class certification in Rule 23(a) and (b) have been satisfied." *In re Am. Int'l Grp., Inc. Sec. Litig. (In re AIG)*, 689 F.3d 229, 238 (2d Cir. 2012).  "In the Second Circuit, Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility in deciding whether to grant certification." *Edwards v. Mid-Hudson Valley Fed. Credit Union*, No. 22-cv-00562, 2023

U.S. Dist. LEXIS 158085, at *12-13 (N.D.N.Y. Sep. 7, 2023) (internal quotation marks and citation omitted). Rule 23(b)(3)'s requirements are met upon demonstration "that questions of law or fact common to the members of the proposed class 'predominate over any questions affecting only individual members,' and that a class resolution is 'superior to other available methods for the fair and efficient adjudication of the controversy.'" *Seaman v. Nat'l Collegiate Student Loan Tr. 2007-2*, No. 18-1781, 2023 U.S. Dist. LEXIS 43041, at *71 (S.D.N.Y. Mar. 13, 2023) (citation omitted). There are also practical purposes for conditional settlement class certification and appointment of class counsel, "including avoiding the costs of litigating class status while facilitating a global settlement, ensuring all Class members are notified of the terms of the proposed Agreement, and setting the date and time of the final approval hearing." *Carrasco v. Endurance U.S. Holdings Corp.*, No. 17-7319, 2020 U.S. Dist. LEXIS 46905, at *2 (S.D.N.Y. Mar. 17, 2020).

Courts routinely certify Rule 23 classes in data breach cases for settlement and trial purposes. *See, e.g., In re Solara Med. Supplies Data Breach Litig.,* No. 19-2284, 2022 U.S. Dist. LEXIS 72834, at *30 (S.D. Cal. Apr. 20, 2022); *In re Capital One Consumer Data Sec. Breach Litig.*, No. 19-2915, 2022 U.S. Dist. LEXIS 234943, at *38 (E.D. Va. Sep. 13, 2022); *Fero v. Excellus Health Plan, Inc.*, 502 F. Supp. 3d 724, 752 (W.D.N.Y. 2020); *In re Sonic Corp. Customer Data Breach Litig.*, No. 17-02807, 2020 U.S. Dist. LEXIS 204169, at *17 (N.D. Ohio Nov. 2, 2020).

Upon final certification of a class action for settlement purposes, a court may proceed to evaluate the proposed settlement agreement for purposes of final approval. "Under Rule 23(e), a court may grant final approval of a proposed settlement 'only after a hearing and only on finding that it is fair, reasonable, and adequate.'" *Broockmann*, 2023 U.S. Dist. LEXIS 191241, at *15 (quoting Rule 23(e)(2)).

"A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful

discovery." *Wal–Mart Stores, Inc.*, 396 F.3d at 116 (quoting MANUAL FOR COMPLEX LITIGATION (Third) § 30.42 (1995)) (internal quotations marks omitted).  Where a settlement is achieved through arm's-length negotiations by experienced counsel and there is no evidence of fraud or collusion, "[courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement."  *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 5-10240, 2007 U.S. Dist. LEXIS 57918, at *4 (S.D.N.Y. July 27, 2007).

The Second Circuit identified nine factors in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462-63 (2d Cir. 1974), that district courts should consider in evaluating a proposed class action settlement:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Each of these factors militates in granting final approval of the Settlement.

The Court must also consider the factors enumerated in Rule 23(e)(2), which "adds to, rather than displace[s] the *Grinnell* factors."  *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019).  Rule 23(e)(2) "focus[es] the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."  *See* Fed. R. Civ. P. 23(e)(2), Advisory Committee Note.  These "core concerns" are stated in Rule 23(e)(2):

(A)    the class representatives and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

  i.    the costs, risks, and delay of trial and appeal;

  ii.    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims, if required;

  iii.    the terms of any proposed award of attorney's fees,

iv.    including timing of payment; and

v.    any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Here, as argued *infra*, the Court should grant final certification of the proposed Class for settlement purposes and final approval of the proposed Settlement Agreement.

## V.    THE COURT SHOULD GRANT FINAL CERTIFICATION OF THE SETTLEMENT CLASS.

Plaintiff moved to preliminarily certify the Class for settlement purposes, and the Court granted the motion on December 21, 2023. *See* Prelim. Approval Order. For the reasons stated in Plaintiff's Mem. in Supp. of Mot. for Preliminary Approval of Class Action Settlement (ECF No. 53), final class certification for settlement purposes is appropriate.

## VI.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND SHOULD BE FINALLY APPROVED.

Courts in the Second Circuit rely on the overlapping multi-factor tests of *Grinnell* and Rule 23(e)(2). *Pickard v. Onsite Facility Servs., LLC*, No. 5:22-cv-207, 2023 U.S. Dist. LEXIS, at \*13 (N.D.N.Y. Oct. 25, 2023) (citations omitted). "In finding that a settlement is fair, not every factor must weigh in favor of settlement, rather the court should consider the totality of these factors in light of the particular circumstances." *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 138 (S.D.N.Y. 2010) (internal quotation and citations omitted). "The weight given to any particular factor will vary based on the facts and circumstances of the case." *Ingles v. Toro*, 438 F. Supp. 2d 203, 211 (S.D.N.Y. 2006) (citing 7B Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure: Civil § 1797.1, at 77 (3d ed. 2005)). Each of these factors militates in granting final approval of the Settlement.

### A.    The Settlement Is Substantively Fair.

### 1.    This Action Is Complex And Will Be Expensive And Lengthy To Litigate.

"Most class actions are inherently complex and settlement avoids the costs, delays and

multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001); *see also Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) ("There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation."); *D'Angelo v. Hunter Bus. Sch., Inc.*, No. 21-3334, 2023 U.S. Dist. LEXIS 131029, at *13 (E.D.N.Y. July 28, 2023) ("Class action suits have a well-deserved reputation as being most complex." (internal quotation marks and citation omitted). Further, courts consistently hold that unless the proposed settlement is clearly inadequate, its acceptance and approval are preferable to the continuation of lengthy and expensive litigation with uncertain results. *TBK Partners, Ltd. v. Western Union Corp.*, 517 F. Supp. 380, 389 (S.D.N.Y. 1981), *aff'd*, 675 F.2d 456 (2d Cir. 1982).

The Settlement Agreement provides substantial monetary benefits to the Settlement Class while avoiding the significant expenses and delays associated with trial. The resolution of this action affords the Class concrete relief now rather than the potential for relief in the future. While Plaintiff's Counsel is confident that Plaintiff would succeed, further litigation entails risks and delays in relief to Plaintiff and the Class. Data breach cases such as this can be factually complex, requiring protracted and costly litigation. They also typically face significant legal uncertainties, including pleading and pretrial motions, such as the granting of the motion to dismiss in this case, related appeals, obtaining class certification, and bringing and/or opposing a summary judgment motion. This would also result in significant expenses to all Parties and consumption of judicial resources. Plaintiff expects that a judgment for either party would likely be appealed, extending the costs and duration of the litigation.

In reaching their agreement, the Parties considered the uncertainty and risks in litigation and the costs each party will incur if litigation continues, and the Parties both concluded that it is in their mutual interest to resolve the litigation of the claims in the manner outlined in the Settlement Agreement. Garber Decl. ¶¶ 10-11. Thus, the proposed Settlement Agreement is fair, reasonable,

and adequate considering the complexity and expense of litigation, and this *Grinnell* factor weighs in favor of preliminary approval of the proposed Settlement.

### 2. The Class Reaction Is Overwhelmingly Positive.

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Story v.* SEFCU, No. 1:18-cv-764, 2021 U.S. Dist. LEXIS 34909, at *21 (N.D.N.Y. Feb. 25, 2021) (internal quotation marks omitted) (quoting *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002)).  Here, Class Members' responses to the Settlement have been overwhelmingly positive.

First, as of May 1, 2024, zero Class Members have objected to the settlement, and out of a class of approximately 9,800 individuals, only a single individual requested exclusion.  *See* P&N Decl. ¶¶ 17-18.  This is especially noteworthy, as "the notice and approval process generally solicits negative feedback regarding a settlement, because it is designed to solicit opt outs and objections by advising class members of the procedures and deadlines for filing such responses with the court." *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 197 (S.D.N.Y. 2012).  Indeed, courts find the class's reaction to be positive and favor final approval when faced with far more objectors and opt outs.  *See id.* at 196 (118 objectors); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 457 (S.D.N.Y. 2004) (noting that there were 12 objectors and 9 opt-outs and holding that "[t]hese extremely low numbers of objectors and opt-outs strongly support settlement approval.").[3]  "The fact that the vast majority of class members neither objected nor opted out is a 'strong indication' of fairness." *Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008).

---

[3] In fact, courts in this District have approved settlements even when a majority of the class objected. *See, e.g., County of Suffolk v. Long Island Lighting Co.,* 907 F.2d 1295, 1325 (2d Cir. 1990) (approving settlement where "a majority" of class objected); *TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 462 (2d Cir. 1982) (between 54 and 58 percent of class objected).

Second, the Second Circuit has found that a claims rate of 2.8 percent is "commendable for a large nationwide class action like this one . . . ." *Hesse v. Godiva* Chocolatier, No. 1:19-cv-972, 2022 U.S. Dist. LEXIS 72641, at *29 (S.D.N.Y. Apr. 20, 2022). Here, as of May 1, 2024, 280 claims have been submitted, out of 9,865 Class Members, resulting in a claim rate of 2.8%. *See* P&N Decl. ¶ 16.

Courts routinely approve class settlements with far lower claims rates. *See, e.g., Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1377 (S.D. Fla. 2007) (granting final approval with a claims rate of approximately 1.1%); *Arthur v. SLM Corp.*, No. 10-198, ECF No. 249 at 2-3 (W.D. Wash. Aug. 8, 2012) (granting final approval with a claims rate of approximately 2%). Although courts look to claims rate to gauge class reaction to a proposed settlement, ultimately, "[t]he question for the Court at the Final Fairness Hearing stage is whether the settlement provided to the class is 'fair, reasonable, and adequate,' not whether the class decides to actually take advantage of the opportunity provided." *Hamilton v. SunTrust Mortg. Inc.*, No. 13-60749, 2014 U.S. Dist. LEXIS 154762, at *5 (S.D. Fla. Oct. 24, 2014).

The absence of objections, having only a single opt-out, and a high claims rate all weigh heavily in favor of granting final approval of the Settlement.

### 3. The Current State of Litigation And The Amount Of Discovery Completed Favor Final Approval.

The third *Grinnell* factor focuses on "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Torres v. Gristede's Operating Corp.*, No. 04-3316, 2010 U.S. Dist. LEXIS 139144, at *5 (S.D.N.Y. Dec. 21, 2010), *aff'd*, 519 F. App'x 1 (2d Cir. 2013) (citation omitted). Prior to trial, "negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 (internal quotation marks and citation omitted).

Here, before agreement on the Settlement, the Parties litigated for nearly three years. Garber

14

Decl. ¶ 8.  The legal issues have been vetted through motion practice, including a motion to dismiss, and extensive discovery, and the Parties have obtained the factual information required to evaluate the strengths and weaknesses of the claims and defenses.  Garner Decl. ¶¶ 4-8.  This knowledge allowed Plaintiff and his counsel to assess the value of the Class's claims and the risks of continued litigation and determine that the Settlement is fair, reasonable, adequate, and in the Settlement Class's best interest.  *Id.* ¶ 8.  Therefore, the decision to settle was an informed decision by the Parties, and this *Grinnell* factor weighs in favor of preliminary approval.

### 4. Plaintiff Would Face Substantial Hurdles Risks If The Case Proceeded.

In evaluating the fourth and fifth *Grinnell* factors, the risks of establishing liability and damages, courts "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 177 (internal quotation marks and citation omitted).  Here, as in all litigation, there are certainly inherent risks in continuing further litigation.  *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) (approving settlement)*; see also Odom v. Hazen Transp., Inc.*, 275 F.R.D. 400, 412 (W.D.N.Y. 2011) (approving settlement and recognizing "the concomitant risks and costs necessarily inherent in taking any litigation to completion." (citing *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972)).

Defendant has vigorously litigated this case, as seen in its partially successful Motion to Dismiss.  Plaintiff could still lose entirely if, *inter alia*, the Court finds that Defendant's cyber security systems were reasonable or compliant with relevant statutes or that Plaintiff is required to prove individualized damages.  Plaintiff faces numerous risks in pleading, class certification, and a likely summary judgment motion by Defendant.  Moreover, while Plaintiff is confident that an experts' findings would withstand scrutiny, proving liability and damages is nonetheless a substantial and daunting undertaking.  Courts recognize that "[w]hen the success of a party's case turns on winning a so-called 'battle of experts,' victory is by no means assured."  *In re Bear Stearns Cos., Inc. Sec., Derivative*

*& ERISA Litig.*, 909 F. Supp. 2d 259, 266-7 (S.D.N.Y. 2012) (holding that such disputes "weigh in favor of approval.").

Plaintiff is confident he would ultimately prevail at trial, but the Settlement Agreement avoids the risks inherent in further litigation. After careful consideration and arm's-length negotiations, Plaintiff and his counsel concluded the resulting Settlement alleviates these risks and provides a substantial benefit to the Settlement Class in as timely a fashion as possible. Thus, this *Grinnell* factor weighs in favor of the Settlement and favors final approval.

### 5. Maintaining The Class Action Through Trial May Be Challenging.

Courts must consider the possibility of decertification, and the greater the possibility of decertification, the more this factor weighs in favor of settlement approval. *Charron v. Pinnacle Grp. NY LLC*, 874 F. Supp. 2d 179, 200 (S.D.N.Y. 2012), *aff'd sub nom. Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013). There is no guarantee that the Court would certify a class if the Parties continue to litigate. Plaintiff and counsel are confident they could certify and maintain the matter as a class through trial. Nonetheless, they recognize the substantial hurdles before them, including that defendant.

Obtaining a ruling on class certification by the Court could only be reached after additional discovery and full briefing. Were Plaintiff's claims to survive to the class certification stage, Defendant would oppose any motion for class certification, for various possible reasons, including its contention that individualized issues predominate over common issues and that this action would not be manageable as a class action. Even if the Court certified a class, Defendant would likely challenge certification through a Rule 23(f) petition and/or move to decertify the class after further discovery and motion practice—necessitating additional briefing and time, with an uncertain result. The proposed Settlement eliminates these risks and their accompanying expenses and delays. Therefore, this *Grinnell* factor also weighs in favor of preliminary approval.

**6. Defendant's Ability To Withstand A Greater
Judgment Does Not *Per Se* Make The Settlement Unfair.**

Although Defendant could likely withstand a greater judgment, this factor, "standing alone, does not suggest that the settlement is unfair." *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9. Where the settlement is otherwise fair and the defendant could with likely withstand a greater judgment, "this factor is neutral and does not preclude final settlement approval." *Manley v. Midan Rest. Inc.*, 2017 U.S. Dist. LEXIS 44560, at *14-15 (S.D.N.Y. Mar. 27, 2017). Given the case status, strengths and weaknesses of the claims and defenses, appeals process, and protracted litigation generally, Plaintiff and his counsel believe that the Settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class. As such, this factor is neutral.

**7. The Settlement Benefits Are Reasonable Considering
The Possible Recovery And Attendant Litigation Risks.**

With respect to the Settlement's reasonableness, there is "a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart Stores, Inc.*, 396 F.3d 96 at 119 (citation omitted). Judging whether a settlement amount is reasonable "is not susceptible of a mathematical equation yielding a particularized sum." *In re Michael Milken & Assocs. Securities Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993); *see Grinnell*, 495 F.2d 448, 455 n.2 (2d Cir. 1974) ("There is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 269 (S.D.N.Y. 2012) (approving a settlement that represented under 12% of the class's potential damages).

When the Settlement benefits are weighed against the pending litigation risks and potential alternative outcomes, the proposed Settlement is more than reasonable. For example, absent this Settlement Agreement, Defendant could prevail on its legal arguments to defeat liability entirely,

resulting in no recovery for Class Members whatsoever. In light of these possibilities, the Parties found the Settlement amount to be more than reasonable. *See* Garber Decl. ¶¶ 10-11. Moreover, where a settlement assures immediate payment to settlement class members—as here—and does not "sacrific[e] speculative payment of a hypothetically larger amount years down the road," the settlement is reasonable under this factor. *See Gilliam v. Addicts Rehab. Ctr. Fund*, No. 5-3452. 2008 U.S. Dist. LEXIS 23016, at *13 (S.D.N.Y. Mar. 24, 2008) (internal quotation marks and citation omitted).

In fact, to Class Counsel's knowledge, the terms of this settlement are more favorable than the terms of similar employee data breach settlements. Garber Decl. ¶ 10. For example, settlements have been approved for other data breach class actions where no credit monitoring was offered, and loss reimbursement was minimal. *See, e.g.*, *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015) (approving settlement where "class members who submitted valid claims will each receive approximately $14.81"); *In re Adobe Systems Inc. Privacy Litigation*, No. 13-5226, ECF No. 105 (N.D. Cal. Aug. 13, 2015) (approving settlement that provided no reimbursement for economic losses); *In re Heartland Payment Sys.*, 851 F. Supp. 2d 1040, 1049, 1079-80 (S.D. Tex. 2012) (approving settlement providing for reimbursement of economic costs and no credit monitoring).

The significant benefits available under the Settlement confirm that it is well within the range that courts have traditionally found to be fair and adequate under the law.

**B. The Settlement Is Procedurally Fair.**

The Settlement, reached as a result of arm's-length negotiation after hard-fought litigation and mediation, meets the standard for procedural fairness. In determining whether a settlement is procedurally fair, courts evaluate the "negotiating process, to ensure that the settlement resulted from arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests." *D'Amato*, 236 F.3d at 85.

### 1.  Plaintiff And His Counsel Have Adequately Represented The Class.

Plaintiff and his counsel adequately represented the Settlement Class, satisfying Rule 23(e)(2)(A).  But for the courage and initiative of Plaintiff, the Settlement Agreement would not have been reached.  Plaintiff expended considerable time and effort, recounting the facts of his experiences during discovery, reviewing factual issues in connection with his complaint, and staying informed and involved with case developments, including settlement negotiations.

With respect to Plaintiff's counsel, "the focus . . . is on the actual performance of counsel acting on behalf of the class."  Fed. R. Civ. P. 23, Advisory Committee Note.  Plaintiff's counsel engaged in extensive motion and discovery practice before settlement.  Garber Decl. ¶ 5.  Plaintiff's counsel filed the complaint, survived a motion to dismiss, and engaged in relevant technical discovery to quantify damages to the Class.  *Id.*  Plaintiff's counsel also prepared for and engaged in arm's-length settlement negotiations with Defendant.  *Id.*  Thus, they fully comprehended the strengths, weaknesses, and value of the Actions before entering into the Settlement.  Plaintiff and his counsel adequately represented the Settlement Class.

### 2.  The Proposal Was Negotiated At Arm's Length.

"A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."  *Wal-Mart Stores, Inc.*, 396 F.3d 96 at 116 (internal quotation marks and citation omitted).  Therefore, final approval of a proposed settlement of a class action should be granted "where it 'appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval[.]"  *In re Nasdaq Market–Makers Antitrust Litig.,* 176 F.R.D. 99, 102 (S.D.N.Y. 1997) (citation omitted).

The Parties' Settlement Agreement is the product of serious, informed, non-collusive

negotiations. While the Parties scheduled a session with an experienced neutral mediator, Bennett G. Picker of Stradley Ronon, for July 20, 2023, they reached a tentative settlement on their own in advance of that date and therefore advised Mr. Picker that they would be canceling the mediation. Garber Decl. ¶ 6. The Parties continued negotiation through counsel and came to agree upon the instant settlement terms. *Id.* In doing so, the Parties engaged in meaningful discovery, which "put the parties in a unique position to weigh the strengths and weaknesses of the case and thus addressed whether settlement was the better option as opposed to proceeding to trial." *See D'Angelo v. Hunter Bus. Sch., Inc.*, 2023 U.S. Dist. LEXIS 131029, at *16-17 (citation omitted); Garber Decl. ¶¶ 7-8. The Settlement Agreement was negotiated at arms-length, and thus, the presumption of fairness, adequacy, and reasonableness should apply.

### 3. The Allocation Plan Is Fair And Adequate, and Class Members Are Treated Equitably.

"To warrant approval, the plan of allocation must also meet the standards by which the settlement was scrutinized — namely, it must be fair and adequate . . . . An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re WorldCom, Inc. Sec. Litig.*, 388 F.Supp.2d 319, 344 (S.D.N.Y. 2005) (internal quotation marks and citations omitted).

Rule 23(e)(2)(D) instructs the court to consider whether the settlement agreement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).

Here, the allocation plan is reasonable and treats all Class Members in an equitable manner because it avoids the cost and risk of further litigation, all Class Members have the option to make a claim for any of the applicable benefits, and the Parties have proposed an effective allocation method. *See Pickard*, 2023 U.S. Dist. LEXIS 191242, at *21-22 (citing *Story v. SEFCU*, No. 1:18-cv-764, 2021 U.S. Dist. LEXIS 34909, at *10 (N.D.N.Y. Feb. 25, 2021)). Each Class Member is eligible to receive the same benefits, specifically a cash payment for documented Ordinary Losses, documented

Extraordinary Losses, and Attested Lost Time attributable to the Data Incident, as well as the information security improvements to be taken or already taken by Defendant, described *supra*. SA § 2.3. The Settlement treats each Class Member equally, while still accounting for potential differences in ordinary and extraordinary expenses each Class Member potentially incurred. Proposed Class Counsel recommends this allocation formula. *See* Garber Decl. ¶ 21.

    **4. Notice Was Provided In The Best Practicable Manner.**

Rule 23(c)(2)(B) requires that class members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Rule also requires that any such notice clearly and concisely state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through an attorney if the member so desires; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on class members under Rule 23(c)(3). *Id.*

Here, the Court found that the form, content, and manner of distribution of the Class Notice "constitutes the best notice practicable under the circumstances, and complies fully with the notice requirements of due process under Fed. R. Civ. P. 23." Prelim. Approval Order ¶ 6.

Pursuant to the schedule approved by the Court for the dissemination of the Class Notice, on or before February 4, 2024, the Settlement Administrator provided Notice to each Class Member for whom Defendant could ascertain a mailing address. *See* P&N Decl. ¶ 8. On February 2, 2024, the Settlement Administrator established a dedicated toll-free phone number for inquiries from Class Members, and on the same date, it launched the Settlement Website, which contains key case and Settlement information, including, *inter alia*, the Settlement Agreement, the Settlement Long-Form Notice, and the Complaint. *See* P&N Decl. ¶¶ 12-13.

As the Class Notice was disseminated in strict compliance with the Court's directives, final approval is appropriate.

### 5. The Proposed Attorneys' Fees And Expenses And Service Awards Are Fair And Adequate.

Plaintiff will apply to the Court for an award of reasonable attorneys' fees and reimbursement of litigation costs in an amount not to exceed $295,000. SA § 7.2. Plaintiff will also request a service award not exceeding $5,000 for Plaintiff Trevor Miller in recognition of the time and efforts prosecuting this matter and assisting with mediation, and risks taken by him in commencing the Action. *Id.* § 7.3. As set forth in the Settlement Agreement, subject to Court approval, Defendant agreed not to oppose requests by Plaintiff in these amounts. *Id.* §§ 7.2-3. Plaintiff worked diligently and extensively with Plaintiff's counsel throughout this litigation, including gathering information pertaining to the factual allegations of the Complaint and other putative Class Members' experiences, responding to attorney inquiries, participating in the discovery process, and representing the Class's interests in reviewing and approving the Settlement Agreement. Garber Decl. ¶ 37. Absent these efforts, the significant Settlement awards paid to Settlement Class would not be possible. *Id.* ¶ 38. The $5,000 service award requested here is also consistent with awards authorized in numerous reported case decisions in this Circuit. *See, e.g.*, *Moses v. N.Y. Times Co.*, 79 F.4th 235, 253-56 (2d Cir. 2023) (affirming approval of a $5,000 incentive award); *James v. China Grill Mgmt.*, No. 18-455, 2019 U.S. Dist. LEXIS 72759, at *10 (S.D.N.Y. Apr. 30, 2019) (authorizing incentive awards of $5,000) (collecting cases); *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 124-125 (S.D.N.Y. 2001). The Settlement Agreement provides that court approval of Plaintiff's attorneys' fees, costs, and expenses, and the service award to Plaintiff, are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement. SA § 7.5.

### 6. The Parties Have No Additional Agreements.

The only agreement related to this litigation is the proposed Settlement Agreement, and there

are no side agreements regarding attorneys' fees or costs related to this proposed Settlement.  Garber Decl. ¶ 9.

**C.  <u>Proposed Class Counsel Should Be Provisionally Appointed As Class Counsel.</u>**

The proposed class counsel must be "competent, willing and able to protect the interests of the absent class members." *Feder v. Elec. Data, Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005).  Rule 23(g) enumerates four factors for evaluating the adequacy of proposed counsel:

1.  the work counsel has done in identifying or investigating potential claims in the action;
2.  counsel's experience in handling class actions, other complex litigation, and types of claims of the type asserted in the action;
3.  counsel's knowledge of the applicable law; and
4.  the resources counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(C)(i).

All of these factors militate in favor of appointing FBFG and KP as Class Counsel.  Both firms have adequately represented the Settlement Class and have extensive experience in litigating class actions, including data breach actions of similar size, scope, and complexity.  Garber Decl. ¶¶ 23-35; *see also* Prelim. Approval Order ¶ 5.  Proposed Class Counsel have devoted significant resources towards prosecuting this action, including investigating Plaintiff's claims, pursuing those claims aggressively through motion practice, conducting informal discovery, participating in private mediation sessions, and negotiating the proposed Settlement over an extended period of time.  *Id.* ¶ 12.  Accordingly, Plaintiff respectfully requests that the Court finally appoint Todd S. Garber and Andrew C. White, of FBFG, and Alex J. Dravillas, of KP, as Class Counsel.

<u>**CONCLUSION**</u>

Plaintiff respectfully requests that the Court grant final approval of the Settlement Agreement and enter the contemporaneously filed Proposed Final Approval Order.

Dated:  White Plains, New York

      May 1, 2024


               By:      *s/ Todd S. Garber*
                       Todd S. Garber
                       Andrew White
                       **FINKELSTEIN, BLANKINSHIP,**
                       **FREI-PEARSON & GARBER, LLP**
                       One North Broadway, Suite 900
                       White Plains, New York 10601
                       Tel: (914) 298-3281
                       tgarber@fbfglaw.com
                       awhite@fbfglaw.com